[L. A. No. 16922. In Bank.—September 25, 1940.]

CARRIE B. SULLIVAN, Respondent, v. UNION OIL COMPANY OF CALIFORNIA (a Corporation) et al., Defendants; E. R. ABBEY, Administrator, etc., Appellant.

Harry C. Westover and Alfred A. Appling for Appellant.

Emmett E. Doherty and Robert G. Blanchard for Respondent.

HOUSER, J.—On this appeal, the questions that are presented for the consideration of this court involve (1) the meaning and application of certain provisions of the rules and regulations of an "Employees' Provident Fund" of the Union Oil Company of California, a corporation, and (2) the effect of a property-settlement agreement upon plaintiff's right as beneficiary of the interest of her former husband in said fund.

Plaintiff and John W. Sullivan (now deceased) were married in 1912. In 1916 the husband was employed by the Union Oil Company of California. In the following year that company inaugurated its so-called "Provident Fund", to which each employee was to contribute a percentage of his wages in return for benefits which thereafter were to become payable to him or to his designated beneficiaries. The husband became a participant in the fund as of November 1, 1917, and designated plaintiff, who was then his wife, as beneficiary. Some nineteen years later, on July 15, 1936, plaintiff instituted a divorce action against her husband and in connection therewith procured from the trial court a temporary order by which the husband was enjoined from the subsequent removal or transfer of money standing to his credit in the said fund. During the pendency of the divorce action, and on July 28, 1936, plaintiff and the husband executed a property-settlement agreement whereby the community and other property of the parties was divided between them. By the terms of said agreement the husband was to pay to plaintiff the sum of $60 a month for the three years next thereafter ensuing, and, with that exception, each was relieved from any future obligation to the other, and expressly waived any right to share in or succeed to the estate of the other. With respect to the "Provident Fund", the agreement provided that the temporary restraining order might be modified to permit the husband to draw $200 there-

from for attorney's fees and expenses in connection with the settlement of the property rights of the parties, and at that time the court issued an order to that effect. On August 7, 1936, an interlocutory decree of divorce by default was entered in favor of plaintiff, and on the same day an order was made for the payment to her of "support money" and alimony; also, a further restraining order was issued by which the husband was enjoined from conveying, encumbering, transferring, or withdrawing any deposit or credit existing in his favor in the "Provident Fund". On August 24, 1937, a final decree was entered in the divorce action. No express mention of the property settlement of the parties was made in either the interlocutory or the final decree. However, the final decree provided that " . . . wherein said interlocutory decree relates to the property of the parties hereto, said property be and the same is hereby assigned in accordance with the terms thereof to the parties therein".

John W. Sullivan died on October 30, 1937, at which time he had neither retired from his employment nor had he reached the retirement age of 60 years, but until his death was an active employee of the Union Oil Company and a prospective participant in the "Provident Fund", having to his credit therein the sum of $4,382.83. On March 16, 1938, plaintiff filed an action against the Union Oil Company for declaratory relief, for the purpose of establishing her asserted right as beneficiary to the $4,382.83 in the fund. On May 20, 1938, the administrator of the decedent's estate filed a complaint in intervention wherein it was alleged that the decedent's heirs, and not plaintiff, were entitled to the money in the said fund, for two reasons: First, that under the rules and regulations of the fund, on the date when her final divorce decree was entered plaintiff became ineligible as a beneficiary of the fund; and, secondly, that by virtue of the terms of the property-settlement agreement between the then husband and wife, plaintiff had accepted the provision made for her therein *"in full satisfaction"* of her right to the community property, and thereby waived any interest which she might have had in the fund. Plaintiff demurred to this pleading, and her demurrer was sustained without leave to amend the complaint. Judgment of dismissal of the action was then entered, from which judgment the intervener has appealed to this court.

With regard to the effect of the rules and regulations of the "Provident Fund" on plaintiff's right as the named beneficiary, it may be noted that the certificate which was issued by the officials of the said provident fund contained at least five different provisions which, in appropriate circumstances, related to the proper distribution of the fund to the respective members thereof, or to their named beneficiaries. However, by the terms of each of two only of such governing provisions is it asserted by either of the contending parties herein that the rights of the respective parties to the instant litigation are in anywise affected.

The first of the assertedly applicable provisions is number 36 (a), which is found under the general heading of *"Retirement Benefit"*. By that rule it is provided that "The beneficiary must have been the legal spouse of the Member three years prior to the Member's age of 60 . . . *and have remained such legal spouse until the death of the Member;* . . . " (Emphasis added.) Since it is apparent that such provision has application to "Retirement Benefit" only, it follows that in the circumstances of the instant case,—and particularly in view of the fact that the former husband of plaintiff herein had neither retired, nor had reached the age of 60 years at the time of his death,—no support can be found for the contention that under the rules and regulations which governed the distribution of the fund plaintiff was ineligible to become a beneficiary of the money standing to the credit of her former husband in the said fund.

The only other rule which apparently has application to the situation here presented is number 44, which is to be found under the heading *"Death Benefit"* and which provides that: "In the case of death of any Member *before retirement* there shall be ascertained the total amount standing to the credit of his account and such amount shall be paid to beneficiary, . . . "

Had there been no other limitation to the right of plaintiff herein to maintain her claim as a named beneficiary of the fund, it would seem clear that her contention on this appeal should be sustained. However, the property-settlement agreement between plaintiff and her former husband, which preceded the entry of either the interlocutory decree or the final decree of divorce, contains provisions with reference to the disposition of *all* their property rights,—the effect

of which would seem to preclude plaintiff from maintaining the claim which she asserted in the trial court and which on appeal from the judgment she seeks to establish. Pertinent among the several provisions of the agreement which was entered into between plaintiff and her then husband are the following:

"That, except as hereinafter specified, each party hereto is hereby released and absolved from any and all obligations and liabilities for the future acts and duties of the other, and that each of said parties hereby releases the other from any and all liabilities, debts, or obligations of any kind or character . . . including all claims of either party upon the other for support and maintenance as wife or husband or otherwise, it being understood that this instrument is intended to settle the rights of the parties hereto *in all respects,* except as hereinafter provided.

"That any and all property acquired by either of the parties hereto from and after the date hereof, shall be the sole and separate property of the one so acquiring same, and each of said parties hereby respectively grants to the other all such future acquisitions of property as the sole and separate property of the one so acquiring the same.

"The said parties hereto each hereby waive any and all right to the estate of the other *left at his or her death* and forever quitclaim any and *all* right to share in the same of the other, . . . and hereby release and waive all right to inherit under any will of the other . . . and said parties hereby waive any and all right to the estate of the other . . . and from the date of this agreement . . . they shall have all the rights of single persons and maintain the same relation of such toward the other.

"The wife does and shall accept the provisions herein made for her *in full satisfaction* of her right to the *community* property of the respective parties hereto and *in full satisfaction* of her right to support and maintenance as herein provided." (Emphasis added.)

From the foregoing, it becomes apparent that it was the expressed intention of the parties at the time when they entered into the property-settlement agreement to make a full and final adjustment between them of *all* their property rights, interests and claims. There was no exception to that understanding. Everything in the nature of property rights

was included as a part of the subject-matter of that agreement.

It therefore becomes unquestionable that if the property of the parties which was included within the "Provident Fund" was that of the community of plaintiff and her former husband, any right which the wife may then have had therein was released in favor of the husband. And so much is conceded by respondent in her brief on this appeal, wherein it is said: "It is clear that this agreement (except as specifically provided therein) released the husband from any obligation which he might be under to make or continue to retain his former wife *as beneficiary of the Provident Fund,* and it clearly *waived* all rights the respondent might have in that fund *as community property.* It waived all of her rights to inherit from his [the] estate of the husband, and, in general, *terminated in every way their community.* Indeed, if there were any doubt as to these results, the fact that the agreement was drawn by the wife's attorney might be persuasive upon the court in resolving this doubt *against her.*" (Emphasis added.)

However, respondent contends that the fact that such property was community property, as well as the fact that by the terms of the property-settlement agreement between the parties she had finally and conclusively terminated her rights therein, are not necessarily determinative of her right to have the money in the provident fund distributed to her as the beneficiary named in the certificate of membership of her former husband. In other words, she claims solely by virtue of her position as a designated beneficiary of the fund, and contends that, regardless of what effect the property-settlement agreement may have had upon her rights as a wife, her right as the named beneficiary is separate and distinct in character and in nowise is affected by the agreement which was entered into between the respective parties. As authority for that position respondent cites the case of *Jenkins* v. *Jenkins,* 112 Cal. App. 402 [297 Pac. 56], wherein the action was one instituted by the first wife against the widow of an assured for the purpose of establishing a right to the proceeds of a life insurance policy which had been issued while the assured was married to the first wife, who had been designated in the policy as the beneficiary thereof. The assured and the first wife were thereafter divorced, but by prior agreement

between them the latter had released her property rights in his estate. Upon his death and as his heir the widow claimed a right to the proceeds of the insurance policy. However, unlike the situation in the instant case, the property-settlement agreement which was made between the parties therein contained an express provision "that the party of the second part [the first wife] has entered into this contract upon the direct representation, upon which, in signing the contract she has acted, that the party of the first part has made a full and complete disclosure to her of any and all properties which he now, either directly or indirectly owns, as shown by a list of properties hereto attached and made a part hereof, and that the party of the second part shall not be bound by the terms of this contract in so far as any property which is not listed on said attached list". It also was stated in the decision that the list referred to "enumerates much personal property even to the extent of including club memberships and other contracts but it contains no mention of any insurance policy or policies nor any general language that by indirection might refer to any policies of insurance". The court there reached the following conclusions: "that this contract could have no effect upon the policy here in question or the rights of either plaintiff or the deceased husband therein. Defendant here claims that the contract assigned to the husband all of the rights of the plaintiff in the policy and that from the date of the contract the policy and the proceeds thereof, actual or anticipated, became the separate property of the husband. The contract negatives any such claim. The contract *specifically designated the property* involved or affected thereby and *excludes the policy*. The effect of the restrictive clause is claimed to have been aborted by the fact that at the time of the execution of the contract both parties knew of the policy of insurance and that there was therefore no need of specifically mentioning it. This argument would be as effective to support the conclusion that mention of the policy was intentionally omitted." (Emphasis added.) The court further concluded that the decree of divorce had no effect upon the right of the first wife to be paid the amount specified in the insurance policy, especially in view of the failure of the assured to name any other beneficiary thereof. In that case, full recognition was given the same assertion as is made by respondent herein to the effect

that a distinction exists between community property rights of the parties and the right which had inured to the first wife by reason of her having been named in the insurance policy as the beneficiary thereof. In the instant case, it is conceded by respondent that the property settlement agreement which was entered into and which had become effective as between respondent and her former husband had the effect of completely divesting her of any *community* right in the fund. However, the underlying reason for the conclusion reached in the cited case may be found in the language used therein, as follows: "A mere statement of the facts is a complete answer to the contention [of the appellant who was the second wife of the assured]. To adopt such a theory would be to hold that policies of life insurance mean nothing and by such a holding the usefulness of life insurance would be at an end and this form of insurance would pass. Such a holding would necessarily mean that every insurance company would be restrained from paying out on any life insurance policy until a decree determining heirship had been entered or some other statutory mode of ascertaining the heirs had been pursued. The designation of beneficiary would mean nothing, and the beneficent objects of life insurance would be thwarted. Life insurance occupies a too important place in our national and economic life to be thus treated."

Upon a reading of the opinion in the cited case it becomes obvious that the ruling made therein was founded not so much upon a declaration of principles of law, but that it rested, first, upon the fact that the insurance policy was not mentioned in the list of properties which was attached to the agreement of the parties,—with the result that with respect to the said policy the former wife was not bound by the terms of the agreement; whereas, in the present case, by the terms of the property-settlement agreement the existence of the fund was recognized by the parties, as is evidenced by the provisions therein made that the husband was to be given permission to withdraw therefrom a certain sum with which to pay attorneys' fees incurred in connection with the settlement of the property rights of the parties. And secondly, but of greater importance, the decision in the Jenkins case was based upon the court's conception of that which would redound to the best interests of the community. In other words, it may be perceived that in making that

ruling,—for the express purpose of declaring what should be a good business policy,—there was a departure from the conceived functions of an appellate court. Clearly such a declaration is properly a legislative function with which this court should not be concerned.

In the instant case, it is not seriously contended that in and of itself the decree of divorce had any effect upon the asserted right of plaintiff as a beneficiary. That question heretofore has received the attention of this court, and appears to have been settled against any affirmative claim in that regard. (*Jenkins* v. *Jenkins,* 112 Cal. App. 402 [297 Pac. 56]; *Courtois* v. *Grand Lodge A. O. U. W.,* 135 Cal. 552 [67 Pac. 970, 87 Am. St. Rep. 137]. See, also, note, 52 A. L. R. 389, 390, and cases there cited; 59 A. L. R. 172; *Guarantee Fund Life Ins. Assn.* v. *Willett,* 241 Mich. 132 [216 N. W. 369]; *Pendleton* v. *Great Southern Life Ins. Co.,* 135 Okl. 40 [273 Pac. 1007].) But the dominant and governing feature herein which clearly distinguishes the facts from those in the Jenkins case is that of her own free will, with full knowledge of the existence of the fund and of all pertinent facts, acting under the advice and counsel of her attorney (who drafted the agreement), and for full and valuable consideration therefor, the wife had expressly agreed with her husband to forever settle and divide between them *all* their respective properties including that of the community, to waive any right of succession or inheritance with respect to his remaining property and to release him from any and all obligations to her which theretofore may have had existence for any reason whatsoever.

Neither insurance policies nor rights arising thereunder are either sacred or "untouchable". As far as present consideration is concerned, an insurance policy is but a form of contract. An insurance policy in legal contemplation is property, which can be sold, assigned or bequeathed by the owner thereof. As was said in *Blethen* v. *Pacific Mut. Life Ins. Co.,* 198 Cal. 91, 98 [243 Pac. 431], " 'Its pecuniary value to its owners was [is] as great as though they held a promissory note of the company for that amount, . . . ' (*In re Dobbel,* 104 Cal. 432 [43 Am. St. Rep. 123, 38 Pac. 87].)" The provisions of an insurance policy and the question of the personal rights derivable therefrom may be the subject of interpretation or construction in a manner not

distinguishable from that accorded terms or rights which may be specified in any other written or oral agreement. For example, let it be supposed that prior to the date when plaintiff and her then husband entered into their property-settlement agreement they together had been the owners, in community, of an automobile, which by written agreement entered into between the interested parties had been sold for a stated price, which amount was to be paid to the wife at a designated date; and that thereafter the husband and the wife had executed the property-settlement agreement here under consideration. In essential particulars,—and as far as governing legal principles may be concerned, particularly with respect to the question here involved,—this court is unable to perceive any distinguishing difference between the supposititious case and the one at bar. No substantial reason has been suggested why the express language employed by the parties to the property-settlement agreement should not be given the effect that it "settled" *all* the rights of the respective parties to the agreement, which expressly included those of the community.

The judgment is reversed.

Shenk, J., Edmonds, J., Spence, J., *pro tem.*, Carter, J., and Gibson, C. J., concurred.