[Civ. No. 16957. First Dist., Div. Two. June 22, 1956.]

Estate of MARIO L. FERRERO, Deceased. KATHRYN E. FERRERO, Appellant, v. ALDO FERRERO, as Executor, etc., Respondent.

Moerdyke, Anderson & Evans and Stanley R. Evans for Appellant.

Manny C. Gomez and John H. Machado for Respondent.

KAUFMAN, J.—This is an appeal from an order of instructions made by the Superior Court of Santa Clara County in response to a petition for instructions filed by the executor of the estate of Mario Ferrero, deceased. Aldo Ferrero, the executor, is the brother and former business partner of deceased in a retail grocery business in San Jose, California.

The petition alleged that the partners during their lifetime had entered into a written agreement that in the event of death of one of the partners the surviving partner would become the owner of the grocery business and continue said business as his sole and absolute property, that policies of life insurance were taken out by the brothers in order that such a purchase might be consummated, that the value of the interest of deceased in said business was to be determined by the last annual inventory or accounting, and that the purchase price was to be paid one-third down, the remainder in two annual installments of one-third each.

The trial court found that certain written agreements of the partners dated April 15, 1948, January 12, 1949, and June 1, 1950, were valid and existing agreements, and that the agreement of June 1, 1950, was merely a modification of the agreement of April 15, 1948; that the value of deceased's interest in the partnership is the sum of $49,921.15 as of March 31, 1953; that this sum is to be paid by Aldo Ferrero to the estate, one-third down, and one-third per year with interest of 4 per cent on the deferred payments; that in event of purchase by the petitioner, the proceeds of a certain insurance policy, Number 1509559 of the Bankers Life Company, issued on the life of Mario Ferrero shall be paid to the executor as a payment on account of said purchase price. The court further found that the agreements between the partners had been made for a valuable consideration and were binding upon Kathryn Ferrero, surviving wife of Mario, and upon his children, David, Philip, Michele and Kathryn, and that they had no interest in the policy.

Mario and Aldo Ferrero had been engaged as partners in the grocery business known as "Ferrero Bros." since 1936 until the death of Mario on November 5, 1953. Neither was married at the time the partnership was formed. Mario

married on October 13, 1948, and Michele and Kathryn Ferrero are the children of this marriage. Mario had been married previously, and the children David and Philip are the children of this prior marriage.

On May 18, 1949, Mario executed a will, bequeathing $5,000 to his widow Kathryn, and the remainder of his estate in trust to his brother Aldo for all of testator's surviving children. The principal asset of the estate is the 50 per cent interest in ''Ferrero Bros.''

Three different writings were executed by Mario and Aldo relating to the purchase of the interest of the deceased partner by the survivor. The first agreement, executed April 15, 1948, entitled ''Form of Purchase Agreement,'' stated as its purpose that ''it is the desire of both parties hereto that in the event of the death of the first to die the estate of the deceased partner shall be assured one hundred cents on the dollar for his interest and the surviving partner be enabled to continue the business as his sole and absolute property without danger of interference or interruption.'' The principal provisions of this agreement pertinent here read as follows:

''(Disposition of Interests)

''One: That each party hereto for himself, binding his heirs, executors, administrators, and assigns shall release, transfer, and sell unto the surviving partner to this agreement, and the said surviving partner agrees to purchase all the right, title, and interest which the deceased partner may at the time of his death have in the said Ferrero Brothers Company in consideration of the surviving party to this agreement paying to the estate of the one so to die the value of such interest which shall be ascertained, by the methods hereinafter set forth.

''(Insurance of Parties)

''Two: That in order to guarantee that the means necessary to consummate the purchase shall be available when needed, each of the parties hereto has had policies of life insurance issued on his life in the companies and in the amounts as set forth in 'Schedule I' hereto attached, and made payable to his estate.

''(Payment of Premium—Reservation of Rights)

''Three: That the premium deposits on the policies issued on the life of each party to this agreement shall be paid by the other party, thereby evidencing ownership on the part

of the one so paying the premiums and shall be turned over to him by the insured when received by him from the insurance company.

"FOUR: That all policies of life insurance on the life of either party hereto shall be retained by the party paying the premiums thereon.

"(Valuation of interests)

"FIVE: That the value of a decedent partner's interest in the partnership shall be that proportion of the net worth of the partnership which his fractional interest represents. The net worth of the partnership shall be ascertained by preparing a balance sheet as of the date of the partner's death in the same manner and form as is customary at the end of the fiscal year, using the same basis of depreciations and other charge-offs as are permitted to be made for income tax purposes, and including in the assets the item of 'good will,' which, until further modified by amendment, shall be set at Fifty Thousand Dollars ($50,000.00).

"(Determination of Values)

"SIX: As soon as possible after the death of the first of the said partners to die the value of the interest of the deceased shall be ascertained as set forth in Paragraph Five hereof.

"(Proceeds of Policies)

"SEVEN: After the executor or administrator for the estate of the deceased partner shall have been fully qualified and after the value of the interest of the deceased partner shall have been ascertained as set forth in paragraph five hereof, the surviving partner shall turn over to the executor or administrator of the deceased the policy which he has in his possession on the life of the deceased and for which he paid the premiums. The proceeds of the policy so turned over by him to the executor or administrator of the deceased shall be regarded for all of the purposes of this agreement as a payment by him on account or in full, as the case may be, of the said purchase price.

"EIGHT: That in the event that the insurance proceeds shall not be sufficient to purchase the entire interest of the partner so to die and the surviving partner after having exercised every available means of raising the cash necessary to pay the amount by which the interest of the deceased partner exceeds the insurance proceeds is unable to so do, then the said deficit may be paid in a series of 6 per cent

interest-bearing notes payable monthly over a period of one, two or three years as may be agreed upon between the surviving parties hereto and the executor or administrator of the estate.''

A subsequent provision of this agreement provided that it should terminate upon the written agreement of both parties, upon the lapse of all insurance policies without value or upon liquidation of the business.

On January 12, 1949, the partners executed a written modification of paragraphs Five and Eight of the foregoing agreement, substituting ''No value'' instead of $50,000 for the value of the good will, and extending the time allowed for payment of the balance of the purchase price in excess of the proceeds of the insurance policy, to 10 years, and substituting 4 per cent interest bearing notes for 6 per cent notes.

On June 1, 1950, the partners entered into a formal partnership agreement covering all phases of the business. It contained no reference to the two prior agreements.

Paragraph XIV of the agreement provided as follows:

''Upon the dissolution of the partnership by reason of the death, withdrawal or other act of any partner, or by operation of law, the remaining partner may, if he so desires, continue the business and he shall have the right to purchase the interest of such other partner in the business, assets, and good will by paying the value of such interest as determined by the last annual inventory or accounting. Upon such purchase, the partners hereby agree that the partner purchasing the interest of the other shall do so by paying one-third the purchase price down and the remaining two-thirds in installments of 33⅓% of the balance per year with interest thereupon at 4%. Upon such payment in full of the purchase price, the retiring partner or his representative shall execute and deliver to the remaining member all necessary conveyances of interest. The continuing member shall assume all of the existing firm obligations and hold the seller harmless from all liability thereon. The continuing partner may use the former firm name.''

Appellant herein contends that the agreement of June 1, 1950, should govern the rights of the parties since it was the latest and is inconsistent with the prior agreements. It is true, as appellant says, that a later agreement will supersede an earlier agreement if inconsistent therewith. (*San Diego Const. Co.* v. *Mannix,* 175 Cal. 548 [166 P. 325].) The

cited case, however, construed two agreements, a contract of sale and a declaration of trust, together, stating that they were to be construed as parts of one contract, ''the later superseding the earlier one wherever it is inconsistent therewith.'' Appellant argues that the partnership agreement of June 1, 1950, is a new and complete agreement differing in many respects from the preceding agreements, that it touches on matters not involved in the prior agreements, and deals differently with subjects which were covered in the earlier agreements. The partnership agreement covers every phase of the partnership business. The purchase agreement of April 15, 1948, deals chiefly with one subject, providing a method of purchase of the deceased partner's interest in the partnership from his estate, and providing funds therefor through insurance. The purpose was clearly stated at the beginning of the earlier agreement, showing that it was to protect the estate of the deceased partner and to assure the survivor that he could continue the business. The purpose of the partnership agreement of June 1, 1950, appears from the introductory paragraph to have been to reduce to a formal agreement their existing general partnership relationship. The partnership agreement makes no reference to the prior agreement concerning the insurance policies.

It is urged that Paragraph One of the earlier agreement bound the survivor to buy and the estate of deceased to sell, whereas Paragraph XIV (quoted above) provides that the survivor has the option to purchase. This appears to be a correct interpretation of these paragraphs, and the later would therefore be effective. But since the survivor has in fact elected to purchase, the estate is compelled to sell to him under the partnership agreement also. Appellant says that Aldo Ferrero had not tendered any amount as yet toward the purchase of Mario's interest although it is nearly two years since Mario's death, and that it was almost one year before Aldo asked for instructions. While it is true that the petition for instructions was filed about eleven months after Mario's death, the reporter's transcript shows that at a hearing on May 18, 1954, of appellant's Petition for Removal of Executor, respondent's counsel made it clear that respondent wished to exercise the right of purchase, but appellant's counsel stated that he wished the right of purchase to be restrained until after an audit of the partnership had been made. He believed that this was necessary

in order to determine the sources from which the premiums on the policies had been paid to ascertain whether appellant had any community property interest in the proceeds. Therefore, it appears that respondent within at least six months after decedent's death indicated that he would exercise the right to purchase. The record also shows that on November 16, 1953, only eleven days after Mario's death, appellant filed a claim on the proceeds of the insurance policy here involved, thus preventing respondent's use of the policies for the payment of the purchase price.

██ Appellant points out certain particulars in which she asserts the parties to the first agreement did not adhere to its terms. The agreement in Paragraph Two recites that each of the parties has had a policy of life insurance issued on his life "in the companies and in the amounts set forth in 'Schedule I' hereto attached, and made payable to his estate." Schedule I states "The following policies issued by Banker's Life Company, Des Moines, Iowa. M. L. Ferrero 1509559—$25,000. Aldo Ferrero 1507822—25,000."

The agreement therefore makes it very clear what policies are to be paid to the estate in event of a purchase by the survivor. However, the partners did not actually designate their estates as beneficiaries on the policies, Aldo making Mario the beneficiary of his, and Mario designating his sons David and Philip, as beneficiaries. Since an insurance policy is property which may be assigned, the agreement in regard to these policies may be regarded as an assignment by one partner to the other of each policy for the purpose of purchasing the deceased partner's interest. Section 10130 of the Insurance Code provides that a life policy may pass by transfer, will or succession to any person. (And see *Cook* v. *Cook*, 17 Cal.2d 639, 644 [111 P.2d 322]; *Sullivan* v. *Union Oil Co. of Calif.*, 16 Cal.2d 229, 237 [105 P.2d 922].) No particular form is required for an assignment of an insurance policy (*Mahony* v. *Crocker*, 58 Cal.App.2d 196 [136 P.2d 810]). Therefore, the fact that other beneficiaries were named is not fatal to the plan. In fact, the final provision of the first agreement provided that in event of the simultaneous death of the partners or the death of the survivor before he could complete the purchase, the proceeds of the policies should be paid "to the beneficiaries named therein or to the estate as the case may be."

██ Appellant contends that each partner did not have possession of the policy on the other's life as provided in

paragraph Four of the agreement. However, since Aldo Ferrero produced these policies in court it appears that he had possession of the policy here in question. It is also claimed that provision Three of the agreement was not carried out in that each did not pay the premium on the other's policy. The record shows that all but the last premium were paid from a rental account from property owned prior to Mario's marriage, and which was owned equally by the brothers in partnership. Each had an undivided half interest in these funds. The last premium was paid from the store account which was also owned in equal shares by the assureds. It may therefore be said that this provision was substantially complied with.

It is next urged that the purchase price of the deceased partner's interest should have been determined by the last annual inventory or accounting before the right to purchase is exercised by actual payment. Paragraph XIV of the partnership agreement provides that upon dissolution by death, the survivor shall have the right to purchase the decedent's interest in the business by paying "the value of such interest as determined by the last annual inventory or accounting." The trial court correctly interpreted this phrase to mean the last annual accounting of the partnership prior to dissolution by death, for after one partner's death the business is no longer a partnership. It is to be noted that the earlier agreement and the first amendment thereto had both provided that the value was to be determined at the date of the deceased partner's death.

Appellant maintains that the above noted provision in paragraph XIV that the survivor shall have the right to purchase the interest of the other "by paying the value of such interest as determined by the last annual inventory or accounting" also requires that an election to purchase can only be made by the actual payment of one-third of the purchase price. That paragraph further provides: "Upon such purchase, the partners hereby agree that the partner purchasing the interest of the other shall do so by paying one-third of the purchase price down and the remaining two-thirds in installments of 33⅓% of the balance per year with interest thereupon at 4%." This sentence appears to simply outline the method of paying the purchase price. It would be just as logical to contend that the survivor must pay the entire purchase price in order to effect the election

to purchase, for in the sentence preceding that just quoted, it is stàted that he shall have the right to purchase "by paying the value of such interest," that is the entire purchase price. The trial court clearly adopted the most reasonable interpretation of the language.

Finally, it is contended that where the surviving partner has the right to purchase the interest of the deceased, the estate is entitled to share in the profits until the survivor's election to purchase becomes effectual. In *Keyes* v. *Hurlburt*, 43 Cal.App.2d 497 [111 P.2d 447], the partnership agreement provided that upon the death of one partner, the surviving partners should have the option to purchase his interest, the purchase price being the appraised value at the date of death. The surviving partners continued the business, not electing to exercise the option until nine months after the deceased partner's death, and more than two months after the appraisal. It was held that they were accountable to the heirs and legatees of the deceased partner for a share of the profits earned up to the time the election to purchase was made. The court said that it would be unreasonable to construe the provision therein regarding the appraisal so as to allow the surviving partners to wait until they saw fit to elect to purchase and allow them to retain all of the profits for until the right of election was exercised the estate's interest in the business was continued. The above decision and cases therein cited are in harmony with section 15042, California Corporations Code, which gives the estate the right to interest or at the option of the representative, a share in the profits.

The court in the present case found this allegation of respondent's petition to be true: "That your petitioner has been at all times herein willing and ready to comply with said agreement and has offered to comply therewith heretofore." Respondent testified that he had been so ready and willing since the date of his partner's death, but had been prevented from having access to the insurance funds which had been provided for the payment of the purchase price by reason of appellant's claim to them, asserted eleven days after decedent's death. Appellant is therefore not in a position to complain that payment for the deceased partner's interest was not made at an earlier date. A tender of performance was therefore unnecessary as far as this appellant is concerned. (*Woods-Drury, Inc.* v. *Superior Court*, 18 Cal. App.2d 340, 348 [63 P.2d 1184]; Civ. Code, §§ 1440,

1511, 3532.) No other heirs of the estate are parties to this appeal. The principle enunciated in *Keyes* v. *Hurlburt, supra,* is not applicable to a situation of this kind.

It appears from the record that the Bankers Life company which issued the policy in question was not before the court as a party, hence, insofar as the order of the probate court directs the insurance company to pay over the proceeds of the policy to the executor it would be beyond the jurisdiction of the court and void. In all other respects the order is valid and binding on all parties before the probate court. (*Spencer* v. *Crocker First Nat. Bank,* 86 Cal. App.2d 397 [194 P.2d 775].)

Order affirmed as modified.

Nourse, P. J., concurred.

DOOLING, J.—I dissent. The order appealed from purports to adjudicate title between the respondent, Aldo Ferrero, and the beneficiaries of an insurance policy issued by Bankers Life Company on the life of the decedent. It determines that the proceeds belong to respondent and directs that they be applied toward the purchase price of decedent's interest in the business.

The probate court has no jurisdiction over the subject matter of this part of the order and the order to this extent is void. (*Capital Bond etc. Co.* v. *Hood,* 218 Cal. 729 [24 P.2d 765]; *Rogers* v. *Cady,* 104 Cal. 288 [38 P. 81, 43 Am. St.Rep. 100]; *Burnett* v. *Hoover Ball & Bearing Co.,* 51 Cal.App.2d 613 [125 P.2d 572]; *In re Keck,* 75 Cal.App.2d 846 [171 P.2d 933]; 15 Cal.Jur., Judgments, § 141, p. 52.) Being void the order can be attacked at any time by the beneficiaries. (*Andrews* v. *Superior Court,* 29 Cal.2d 208, 214-215 [174 P.2d 313]; *Estate of Pusey,* 180 Cal. 368, 374-375 [181 P. 648].)

The proceeds of the insurance policy are no part of the estate and the probate court has attempted to adjudicate title to property to which the estate has, and makes, no claim. Since the court in probate has no jurisdiction of this property it clearly has no jurisdiction to adjudicate title to it. Even where the estate claims title its power to adjudicate adverse claims to property is limited to claims by an executor or administrator and a few other special cases and it cannot generally adjudicate the adverse claims of others. (*Central Bank* v. *Superior Court,* 45 Cal.2d 10 [285 P.2d 906], collecting and reviewing the authorities at pp. 15-17.)

It is true that the minor beneficiaries have not appealed. They are not bound to do so but can attack the order as void whenever it is attempted to be enforced against them. Even the affirmance on appeal on other grounds does not validate an order void on its face. (*Andrews* v. *Superior Court, supra*, 29 Cal.2d 208; *Pioneer Land Co.* v. *Maddux*, 109 Cal. 633 [42 P. 295, 50 Am.St.Rep. 67]; *Pennell* v. *Superior Court*, 87 Cal.App. 375 [262 P. 48]; *In re Cavitt*, 47 Cal.App.2d 698 [118 P.2d 846]; 15 Cal.Jur., Judgments, § 140, p. 51, note 3.) The adjudication of jurisdiction on this appeal by others, in which the minor beneficiaries have not joined, could not bind them.

Since the appellants here have an interest in the estate they are adversely affected by the order that the proceeds of the policy are applicable to the purchase price. They did not raise this point until oral argument but it would only promote future litigation to ignore it since the beneficiaries can still attack the order at any time thereby confusing the rights of the parties under it.

A petition for a rehearing was denied July 20, 1956.