ESTATE OF MAX J. GORBY, DECEASED, JACK GORBY AND JACK DINNER-STEIN, COEXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 912–67.   Filed October 27, 1969.

*Sidney J. Matzner*, for the petitioners.
*Erwin L. Stuller*, for the respondent.

#### OPINION

RAUM, *Judge:* The Commissioner determined a deficiency in the estate tax of the Estate of Max J. Gorby in the amount of $92,120.15. The only issue remaining with respect to that deficiency is whether decedent retained sufficient incidents of ownership in two group term life insurance policies to render them includable in his gross estate pursuant to section 2042(2), I.R.C. 1954. The facts have been stipulated.

The decedent, Max J. Gorby (Gorby), was a resident of California at the time of his death, and the duly appointed executors of his will resided in California when the petition herein was filed.

Gorby was an officer of California Marine Curing & Packing Co. and its affiliate, J. R. Barry & Co. (hereinafter sometimes referred to collectively as Marine), and was also a substantial stockholder in the enterprise. In April 1958, Marine took out a noncontributory, group term life insurance policy with the Union Central Life Insurance Co. of Cincinnati, Ohio (Union). The policy was "dated" April 18, 1958, and declared that it was "effective" as of April 1, 1958. The policy covered Marine's employees, officers, and part-time officers, including decedent, and provided that Marine would pay the monthly premiums on the insurance covering their lives as long as they remained in its employ.

In addition, the policy gave the insured a right of "conversion," i.e., upon termination of employment the insured had a right to have issued to him, without producing additional evidence of insurability, a new personal life insurance policy. In order to obtain such policy the employee was required to apply for the new insurance within 31 days following termination, and could obtain a policy under any plan then customarily issued by the company (except term insurance, and without "disability or other supplementary benefits"). However, the employee was also required to pay the full premium applicable to the class of risk to which he belonged, the new policy to be issued as of the employee's attained insurance age and for an amount not greater than the amount of his insurance that was discontinued. In effect, the "conversion" privilege gave the employee no greater right to purchase a new policy upon application and payment of premiums therefor than he would have had in the complete absence of any group policy, except that he was not required to furnish evidence of insurability. There was no provision for any carryover of rights under the old group policy to the new individual policy.

Section E4 of the group policy prohibited those insured from assigning their insurance. However, an endorsement on the policy modified section E4 to permit assignment under certain conditions:

The provision of Section E4 prohibiting a person whose life is insured from assigning his insurance is subject to the condition that such person may assign his insurance under this Group Policy under the following conditions:

(1) The assignment must be absolute in form and must transfer all rights that accrue and will accrue to the insured employee by virtue of being insured under this Group Policy.

(2) The assignment may be made only to one or more of the following: The insured's spouse, children, parents, brothers, sisters, or the trustee of a trust established for the benefit of one or more of his spouse, children, parents, brothers or sisters.

The endorsement was located on the reverse side of the page on which section E4 was located. It was signed by an officer of Union and dated April 18, 1958, the same date as that on which the policy itself was issued.

The policy provided that Union would issue individual "certificates" setting forth the rights of each person insured and stating that the certificate would not modify Union's liability under the policy.[1] Union issued decedent a form certificate of insurance in the amount of $25,000 with a stated "effective date" of April 1, 1958. The certificate named decedent as the insured and his wife, Fanny Serena L. Gorby (Serena), as the beneficiary. One paragraph in the certificate stated that no as-

---

[1] C3. CERTIFICATES. The Company will issue to the Policyholder for delivery to each person insured hereunder an individual certificate setting forth the benefits and privileges to which he is entitled, the beneficiary of such benefits, and the conversion privileges. Such certificate, however, will state that it does not modify or extend the liability of the Company as set forth in this Group Policy.

signment by the insured of his insurance would be valid.[2] However, the introductory clauses on the first page of the certificate declared that the group policy, together with the applications of Marine and those insured under the policy, constituted the entire contract.[3] A similar statement appeared in the policy itself.[4]

Decedent executed Union's form, entitled "Absolute Assignment and Change of Beneficiary of Group Insurance." The instrument was "dated" April 1, 1958, and names Serena as assignee. It provided in part that decedent—

> hereby assigns, transfers, and sets over to the assignee the insurance on his life provided under the said policy, together with all additional insurance that may be provided in the future, and together with all rights, any sum or sums of money, interest, benefits and advantages whatsoever in connection therewith now due or hereafter to become due by virtue thereof.

The document was recorded and signed by a Union official on April 30, 1958. However, the assignment form also provided that Union "does not guarantee the validity of any assignment." On May 19, 1961, Serena signed a document entitled "Change of Beneficiary Agreement" which purported to change the beneficiaries of the assigned policy to herself if living, or if not, then to her children, Alexander J. Gorby and Michael P. Gorby (the children), equally. The instrument was recorded and initialed by a Union official on May 29, 1961.

On July 24, 1959, Marine took out a second group term life insurance policy with the Manhattan Life Insurance Co. of New York (Manhattan). Like the Union policy, the Manhattan policy gave the insured a right to obtain a new individual policy on termination of his employment. The group policy also provided that Manhattan would issue individual certificates which summarized the significant features of the policy.[5] Section 16 of the policy proscribed assignment of the individual certificates.[6] However, just above section 16 on the policy was

---

ASSIGNMENT

[2] No assignment by the insured of his insurance under the Group Policy referred to in this Certificate shall be valid.

[3] The Group Policy, together with the Policyholder's application, a copy of which is attached thereto, together with the applications, if any, of those persons who are insured under the policy, constitutes and contains the entire contract. * * *

This certificate does not modify or extend the liability of the Company as set forth in the Group Policy.

[4] G1. CONTRACT. This policy, together with the Policyholder's application, a copy of which is attached hereto, and together with the written applications, if any, of those persons who are insured under the policy, constitutes and contains the entire contract. * * *

See also fn. 1, *supra*.

[5] Section 14. CERTIFICATES.—The Insurance Company will issue to the Policyholder for delivery to each Individual insured hereunder an individual certificate which shall state the insurance to which such Individual is entitled under this Policy and the Beneficiary to whom benefits are payable, and shall summarize the provisions of this Policy principally affecting the Individual. The word "certificate" as used in this Policy includes certificate riders and certificate supplements, if any.

[6] Section 16. ASSIGNMENT. SEE INDORSEMENT.—The Individual's certificate is non-assignable and the insurance and benefits are non-assignable prior to a loss.

typed "SEE INDORSEMENT." The second page of the policy bears an endorsement deleting section 16, as follows:

INDORSEMENT

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

AT THE REQUEST OF THE POLICYHOLDER SECTION 16 "ASSIGNMENT" SHALL BE AND IS HEREBY DELETED FROM THIS POLICY.

The endorsement was signed by a registrar of Manhattan and was dated July 24, 1959, the date of issue of the policy.

Manhattan issued decedent a certificate of insurance, dated July 24, 1959, in the face amount of $100,000, which named him as the insured and Serena as the beneficiary. The certificate declared that it was non-assignable. However, the introductory clauses on the first page of the certificate stated that the certificate was only "evidence of insurance provided under the Group Policy":

> The insurance evidenced by this Certificate, including the following pages, is provided under and is subject to all of the provisions of the Group Policy.
>
> This Certificate is merely evidence of insurance provided under the Group Policy, which insurance is effective only if the Individual is eligible for insurance and becomes and remains insured in accordance with the provisions, terms, and conditions of the Group Policy.

Similarly, section 11 of the policy provided:

> Section 11. CONTRACT.—This Policy and the application of the Policyholder, a copy of which is attached hereto, together with the Individual applications, if any, of Individuals for insurance hereunder, shall constitute the entire contract between the parties. \* \* \*

On July 31, 1959, decedent signed a document entitled "Absolute Assignment of Insurance Under Group Policy." It provided in part:

> In consideration of love and affection, the undersigned hereby assigns, transfers and sets over the insurance on his life provided under the above numbered group policy, together with all additional insurance that may be provided in the future and together with all rights, all sum or sums of money, interest, benefits and advantages whatsoever in connection therewith now due or hereafter to become due to the undersigned by virtue thereof unto Serena Frieda Gorby \* \* \*

The document also stated that Manhattan "assumes no responsibility for the validity or effect of any assignment." On September 18, 1959, the assignment form was recorded and signed by a registrar of Manhattan. Shortly thereafter,[7] Serena executed Manhattan's form entitled "Change of Beneficiary Request" and changed the beneficiaries of the assigned policy to herself if living, or if not, then to the children, equally.

---

[7] The parties have stipulated that Serena executed the "Change of Beneficiary Request" form "Shortly after" the attempted assignment. However, the form was dated May 19, 1961, nearly 2 years after the attempted assignment.

It appears that Serena was also an officer or part-time officer of Marine, and Manhattan issued to her a certificate of insurance in the amount of $50,000, naming her as the insured and decedent as the beneficiary. The certificate was on a form similar to the one that had been issued to her husband, and contained a nonassignment clause and introductory clauses identical to those in his certificate. On July 31, 1959, the same date that decedent undertook to assign his certificate to Serena, she executed a substantially identical form purporting to assign her Manhattan life insurance to her husband. Shortly thereafter he changed the beneficiaries thereunder to himself if living, or if not, then to their two children, equally.[8]

Serena died on December 15, 1961, and her husband died on May 10, 1963. The proceeds of the insurance policies on his life were not included in his gross estate on the Federal estate tax return. The Commissioner determined that "the decedent retained incidents of ownership in the policies and that the proceeds are includible under section 2042(2) of the Internal Revenue Code of 1954." We hold that the decedent effectively divested himself of all incidents of ownership and that the determination of deficiency in this respect must be disapproved.

Section 2042(2) requires that life insurance proceeds receivable by any beneficiary other than the executor be included in the decedent's gross estate, if at his death the decedent possessed "any of the incidents of ownership" exercisable either alone or in conjunction with another person.[9] Treasury regulation section 20.2042–1(c)(2) explains the meaning of "incidents of ownership":

(c) *Receivable by other beneficiaries.* * * *

(2) For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a

---

[8] There is some confusion in the stipulated facts as to the dates relating to Serena's certificate. The stipulation recites that she signed the assignment document on July 31, 1959; yet it also states that the certificate itself was issued to her on Oct. 1, 1959. The discrepancy is unexplained.

Also, it is not clear why the parties have stipulated the facts relating to Serena's life insurance. No argument has been made by the parties concerning any possible issue based upon the reciprocal assignments, cf. *United States* v. *Estate of Grace,* 395 U.S. 316; *Lehman* v. *Commissioner,* 109 F. 2d 99 (C.A. 2), certiorari denied 310 U.S. 637, and we therefore do not give any consideration to this aspect of the case.

SEC. 2042. PROCEEDS OF LIFE INSURANCE.

The value of the gross estate shall include the value of all property—

*    *    *    *    *    *    *

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * *

loan against the surrender value of the policy, etc. Similarly, the term includes a power to change the beneficiary reserved to a corporation of which the decedent is sole stockholder.

The Commissioner contends that decedent's attempts to divest himself of his rights under the insurance policies were ineffective by virtue of the certificates' nonassignment clauses. The Commissioner also argues that under California law an insured's right to "convert" group coverage into an individual life insurance policy is nonassignable and that as a result the decedent could not divest himself of that incident of ownership in each of the policies.

Our inquiry must focus, in the first instance, on the relevant California law. While Federal law determines whether decedent's rights under the policies require the insurance proceeds to be included in his gross estate, we must look to the applicable State law to ascertain the nature of decedent's rights under the policies. *Landorf* v. *United States*, 408 F. 2d 461, 466 (Ct. Cl. 1969) ; Estate Tax Regs., sec. 20.2042–1(c)(5); Rev. Rul. 69–54, I.R.B. 1969–6, 20, superseding Rev. Rul. 68–334, 1968–1 C.B. 403.

California case law generally reflects a clear public policy in favor of the assignability of individual life insurance policies. *Sullivan* v. *Union Oil Co. of California*, 16 Cal. 2d 229, 237, 105 P. 2d 922, 927 (1940) ; *In Re Mendenhall's Estate*, 182 Cal. App. 2d 441, 444, 6 Cal. Rptr. 45, 47 (Dist. Ct. App. 1960) ; *In Re Ferrero's Estate*, 142 Cal. App. 2d 473, 480, 298 P. 2d 604, 608 (Dist. Ct. App. 1956) ; *Chase* v. *Leiter*, 96 Cal. App. 2d 439, 455–456, 215 P. 2d 756, 765–766 (Dist. Ct. App. 1950) ; *Lewis* v. *Reed*, 48 Cal. App. 742, 745–746, 192 P. 335, 336–337 (Dist. Ct. App. 1920). But no California decision has been called to our attention which adjudicated or considered the assignability of an insured's rights under a group policy. However, sections 10129 and 10130 of the California Insurance Code provide that group policies, as well as individual policies, are assignable unless the policy contains a provision to the contrary:

Sec. 10129. Scope of article; policies excluded. Sections 10130 and 10131 do not apply to group life policies, to group disability policies, or to individual disability policies providing a benefit for loss of time and which are noncancellable and guaranteed renewable for not less than five years, when any of such group life policies, group disability policies or individual disability policies expressly provide that benefits payable thereunder are not assignable, and in such case the benefits shall be paid only as provided in the policy.

Sec. 10130. Manner of transfer; insurable interest of transferee. A life or disability policy may pass by transfer, will or succession to any person, whether or not the transferee has an insurable interest. Such transferee may recover upon it whatever the insured might have recovered. * * *

Sec. 10131. Notice of transfer. Notice to an insurer of a transfer of a life or disability policy is not necessary to preserve the validity of the policy unless expressly required by the policy. * * *

The Commissioner urges that it is significant that sections 10129 and 10130 speak in terms of a "policy" rather than a "certificate." Since under group insurance only the employer is issued a "policy," the argument continues, the statutory provisions do not authorize assignment of the insured's rights under a group policy. We think that this approach places too narrow a construction on these provisions.

Section 10130 obviously contemplates an assignment by the *insured.* Moreover, sections 10129 and 10130 apply to both group and individual policies. Their failure to mention a "certificate" is more probably the consequence of their general applicability than the product of a design to restrict the assignability of the employee's interest in a group insurance policy. We conclude that sections 10129 and 10130 authorize the assignment of an insured's interest under a group life insurance policy as long as there is no provision to the contrary in the policy.

The Government contends further that since each of decedent's original certificates contained unamended provisions prohibiting assignment, the exception in section 10129 removes the certificates from the scope of section 10130. However, the Union policy contained a provision expressly permitting assignments under specified conditions (which Gorby's assignment satisfied) and the Manhattan policy's original provision prohibiting assignment had been deleted by an endorsement executed simultaneously with the issuance of the policy itself. Our task is to reconcile the apparent conflict between the policies and the certificates within the framework of California law.

Plainly, both the master policies and the certificates were on standard forms that proscribed assignment. However, the forms for the master policies were explicitly modified by endorsements so as to permit assignment, and it appears likely that failure to modify the certificates so as to conform to the master policies was merely an oversight. However, in the event of conflict between the master policy and the certificate, it would seem that the master policy must control, for it is the policy and not the certificate that constitutes the contract of insurance. This is made abundantly clear by section 10207(a) of the California Insurance Code which requires all group life insurance policies to contain a provision that: "The policy, the application of the employer and the individual applications, if any, of the employees constitute the entire contract of insurance." In accordance therewith, both the Union and the Manhattan policies contained this provision, and both certificates issued to decedent also included similar statements. See pp. 82, 83, *supra.*

To be sure, there is one California case holding, in the particular circumstances before the Court, that the provisions in an insurance certificate prevailed over those in the policy. *Humphrey* v. *Equitable Life Assurance Soc. of Amer.*, 67 Cal. 2d 527, 63 Cal. Rptr. 50, 432 P. 2d 746 (1967). However, in that case the relevant provisions in the certificate provided broader coverage than the corresponding provisions in the policy. The California Supreme Court reasoned that since the certificate is ordinarily the only document which the employee sees, and since the insurer drafts both the policy and the certificate, the insurer should not be accorded the interpretation of the instruments most favorable to it. This approach illustrates the California courts' policy of construing ambiguities in insurance contracts in favor of the insured. *Metzinger* v. *Manhattan Life Insurance Co.*, —— Cal. 2d ——, 78 Cal. Rptr. 463, 466, 455 P. 2d 391 (1969); *Eliopulos* v. *North River Insurance Co.*, 219 Cal. App. 2d 845, 853, 33 Cal. Rptr. 449, 453 (Dist. Ct. App. 1963); *Tavares* v. *Glens Falls Insurance Co.*, 143 Cal. App. 2d 755, 760–761, 300 P. 2d 102, 106 (Dist. Ct. App. 1956).

In the case before us the certificates narrow rather than broaden the rights of the insured. We think that under California law the conflict should be resolved in favor of the rights of the insured; the terms of the policies must prevail over the nonassignment clauses in the certificates.[10]

The Commissioner also argues that since the original prohibition of assignments in the Manhattan policy was simply deleted and not replaced with a provision affirmatively authorizing assignment, there is no conflict between the Manhattan policy and the certificate's nonassignment clause. We disagree. The Manhattan policy provided that the policy, together with the applications of the employer and the insured, constituted the "entire contract" between the parties. Moreover, decedent's certificate declared that it was "merely evidence of insurance provided under the Group Policy." Together with the endorsement deleting the policy's nonassignment clause, these provisions do conflict with the nonassignment clause in the certificate. In light of California's policy of resolving such conflicts in favor of the insured and in light of the mandate of section 10207(a), we think that assignment was permitted by California law.

[10] The Commissioner argues that since decedent's certificates were "individualized" pursuant to sec. 10209.1 of the California Insurance Code, the nonassignment provisions in the certificates should be accorded more weight than they would otherwise be given. We reject this argument. Sec. 10209.1 requires each certificate issued under contributory group policies to be identified in some way as the certificate of a particular employee. Its purpose is to insure that each employee is adequately informed of his peculiar rights and obligations under the policy. It does not govern the effect of those provisions in the certificate which deal with items already covered by the policy and thus does not in any way undermine sec. 10207(a). Moreover, since both the Union and Manhattan policies did not require employee contributions, sec. 10209.1 did not require the certificates issued to decedent to be "individualized."

The Government contends further that since the endorsement deleting the nonassignment clause in the Union policy was dated April 18, 1958, and the attempted assignment was dated April 1, 1958, the attempted assignment was ineffective because it occurred while the Union policy included an undeleted provision barring assignment. There is no merit to the point.

The endorsement permitting assignment was part of the original policy as it was issued on April 18, 1958. While it is true that the assignment was "dated" April 1, 1958, it is obvious that this was done merely to accord with the recitation in the policy that the policy itself was "effective" as of April 1, 1958, and does not establish that the assignment was in fact executed prior to the time that an assignment was permissible. Antedating an insurance policy to give it retroactive effect is permitted under California law. *Anderson* v. *Mutual Life Ins. Co.*, 164 Cal. 712, 130 P. 726 (1913); see also 9 Couch, Cyclopedia of Insurance Law, sec. 39 : 87 at 493 (2d ed. 1962); 7 Williston, Contracts, sec. 905 (3d ed. 1963). Moreover, regardless of when the assignment was actually executed, the terms of the policy demonstrate that the parties contemplated that as of April 1, 1958, assignment would be permitted. Since the attempted assignment complied with the requirements established by the endorsement, we conclude that decedent's assignment of his rights under the Union policy was effective.

Next, the Commissioner contends that decedent's right under each policy to "convert" the group coverage into an individual life insurance policy was personal to him and therefore nonassignable. We disagree. Pretermitting the question whether the right to convert—i.e., the right to purchase new individual life insurance (upon termination of employment) and paying full premium therefor—is an "incident of ownership" within the meaning of section 2042(2) of the Internal Revenue Code of 1954,[11] we conclude that such right was just as much subject to assignment under California law as any other right attaching to the employee's insurance.

Section 10209 of the California Insurance Code requires the certificates issued under a group insurance policy to contain a conversion privilege:

---

[11] Compare *Landorf* v. *United States,* 408 F. 2d 461 (Ct. Cl.), where an assignment of an employee's rights under a group policy was treated under New York law as carrying with it an assignment of the right to convert, and where the court concluded that the power to terminate one's employment and thus bring into play the right to convert cannot be considered an incident of ownership. In this respect the court stated (p. 469) : "we do not believe that Congress intended to include the power to terminate employment, a right which everyone can exercise at any time, to be an "incident of ownership" in property simply because the property involved is somehow related to the employment. The exercise of the right to terminate employment in no way derogates the rights in the property assigned. Accordingly, we find that decedent's right to terminate his employment is not an incident of ownership within the meaning of section 2042.[10] [Footnote omitted.]"

Sec. 10209. Individual certificates; contents. Except as provided by Sections 10203.5, 10203.6 and 10203.8, the policy shall contain a provision that the insurer will issue to the employer for delivery to the insured employee an individual certificate setting forth:

\* \* \* \* \* \* \*

(b) A provision that if the employment terminates for any reason whatsoever and the employee applies to the insurer within 31 days after such termination, paying the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, he is entitled, without producing evidence of insurability, to the issue by the insurer of any individual life policy in any one of the forms, other than term insurance, customarily issued by the insurer.

\* \* \* \* \* \* \*

(d) A provision that if the employee dies during the 31-day period within which he is entitled to have an individual policy issued to him in accordance with this section and before any such policy shall have become effective, the amount of life insurance which the employee is entitled to have issued to him under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made.

The provisions of (b) and (d) shall apply to any insurance issued pursuant to Section 10203.4 on the life of a spouse of an employee. \* \* \*

The Commissioner urges that the final paragraph in section 10209 implicitly excludes assignees from the scope of that section by failing to mention them. The precursor of the final paragraph was introduced in 1945 in response to the enactment of section 10203.4, which authorized the insurance of dependents under a group policy. Compare 1945 Cal. Stats., ch. 465, sec. 1, at p. 963, with *id.* ch. 465, sec. 2, at p. 964. Thus the last paragraph of section 10209 was addressed to a problem created by statutory expansion of the class of those authorized to be insured. It was not concerned with the question of assignment, and we think it has no relevance to that issue.

The Government also relies on the use of the word "employee" in section 10209 and argues that it should be construed narrowly—i.e., that only an "employee," and not an assignee, may exercise the conversion privilege. Specifically, it is contended that since the group policies were issued pursuant to section 10202 of the Insurance Code, we should look to section 10202.5 to determine the definition of "employee" as that term is used in section 10209. Section 10202.5 provides:

Sec. 10202.5. Employees includible in group. (a) Any policy issued to a policyholder eligible for group insurance pursuant to Section 10202, may also provide that the term "employees" shall include the officers, managers and employees of subsidiary or affiliated corporations, and the individual proprietors, partners and employees of affiliated individuals and firms, when the business of such subsidiary or affiliated corporations, firms, or individuals is controlled by the policyholder through stockownership, contract or otherwise, or when the policyholder is controlled by affiliated corporations, firms or individuals through stock ownership, contract or otherwise. A policy issued under Section 10202

may extend the benefits provided for employees to the individual proprietors or the partners who constitute the policyholder, but limited to such individual proprietor and/or partners who are actively engaged in the business the employees of which are covered by the group insurance.

(b) Nothing contained herein shall permit any person other than an officer, manager, or employee for compensation of the policyholder or of one or more of the individuals, firms, or corporations or of the individual proprietors or partners specified in subdivision (a) to become insured under a group policy. * * *

The Government's reliance on section 10202.5 is unjustified. It defines "employees" for the purpose of describing who may qualify as an insured and does not address the question of the assignability of the right of conversion. "Employee" is used in section 10209 to describe a right which is initially given to the employee under a group policy. The use of that term alone does not suggest anything about the assignability of that right. Cf. *Estate of Powel Crosley, Jr.*, 47 T.C. 310, 324–325, acq. 1967–2 C.B. 2.

The Commissioner urges that the command of section 280 of the Insurance Code, that "if the insured has no insurable interest, the contract is void," offers reason for construing section 10209 to prohibit assignment of the right of conversion. The Commissioner contends that if the right of conversion were assignable, there would be a possibility that the assignee, in converting the policy, would name a beneficiary who lacked an insurable interest (as defined by section 10110 of the Insurance Code), and the policy would consequently be void.[12] The Commissioner thus argues that we should read a prophylactic rule into section 10209; by prohibiting assignment of the conversion right, section 10209 would avoid conflict with section 280.

While the Commissioner offers a possible justification for his construction of 10209, we find his argument too thin. Sections 10129 and 10130 declare that group life insurance policies are assignable unless the policy provides to the contrary. Since section 10209 is not concerned with the assignability of the conversion right, we shall not infer from the legislature's silence an intent to depart from the policy announced in sections 10129 and 10130. Moreover, our reading of section 10209 does not impair the effectiveness of the insurable interest requirement. If, after the right of conversion has been exercised, there is absent the requisite insurable interest, section 280 will, if applicable,[13] simply declare the life insurance policy void.

---

[12] Sec. 286 of the Insurance Code requires that an insurable interest in the life of the insured "must exist when the insurance takes effect, but need not exist thereafter or when the loss occurs." The Commissioner's argument assumes that when the conversion right is exercised, a new policy is created and is subject to the requirements of secs. 280 and 286. We need not pass upon this latter point, for we conclude in any event that sec. 280 does not call for the interpretation of sec. 10209 urged by the Commissioner.

[13] See fn. 12, *supra*.

Petitioner relies in part upon a "ruling" by the Insurance Commissioner of Pennsylvania. The statute in that State requiring group policies to include a right of conversion (Pa. Stat. Ann., tit. 40, sec. 532.6(9) (1954)) is similar to the corresponding provision in section 10209(b) of the California Insurance Code. The "ruling" was contained in a letter which was introduced in evidence and which unambiguously stated that an absolute assignment "would divest the employee (insured) of all rights under the policy, including the right of conversion." On the other hand, the Government relies upon a similar letter, also in evidence, from the insurance commissioner of California which appears to look in the opposite direction. We find the matter in this respect too inconclusive, and in any event, these informal "rulings" do not give us any strong indication as to what the Supreme Court of California would decide. Cf. *Commissioner* v. *Estate of Bosch*, 387 U.S. 456, 465. They do not affect our conclusion that the decedent's right to convert his insurance under each policy was assignable and that he had in fact divested himself of all incidents of ownership including that right (if it be deemed to be an incident of ownership).

In his reply brief the Commissioner raises for the first time the question whether decedent inherited from Serena those rights which he had effectively assigned to her. Petitioner did not address itself to this issue, and no evidence directed to any such issue was offered by either party. The Commissioner contends that since petitioner failed to prove that decedent did not inherit whatever rights he had assigned, there has been a failure of proof that at the time of his death decedent did not possess incidents of ownership in the insurance policies.

A statutory notice of deficiency is presumed correct, and petitioners have the burden of disproving its correctness. However, the deficiency notice asserted that "decedent *retained* incidents of ownership in the policies." (Emphasis added.) The Commissioner thus proceeded upon the theory that decedent's attempted assignments did not effectively transfer all of his rights under the policies. The Commissioner's departure from this theory at this late date places the burden on him to prove that decedent inherited Serena's rights under the policies. Cf. *Rozelle McSpadden*, 50 T.C. 478, 491–493; *Sheldon Tauber*, 24 T.C. 179, 184–187, acq. 1955–2 C.B. 9. We conclude that since he has failed to offer any evidence with respect to inheritance, he has failed to sustain his burden of proof on this issue.

We conclude that decedent's assignments of his interests under the two group life insurance policies effectively divested him of the incidents of ownership in both policies. The Commissioner erred in his inclusion of the proceeds in decedent's estate under section 2042(2).

*Decision will be entered under Rule 50.*