[Civ. No. 10170. First Appellate District, Division Two.—July 23, 1936.]

THOMAS VAN DYKE TYLER SHAW, a Minor, etc., et al., Respondents, v. EDWARD E. JOHNSON, as Administrator, etc., Appellant.

James E. Colston, John G. Alioto and Jack E. Hursh for Appellant.

Courtney L. Moore and Heller, Ehrman, White & McAuliffe for Respondents.

SPENCE, J.—This action was brought to declare a trust in the proceeds of a life insurance policy written by the Pacific Mutual Life Insurance Company upon the life of Frances Tyler Shaw, deceased. We need not refer in detail to the various pleadings filed by the parties. When the cause went to trial, the only controversy remaining was one between the defendant, as executor of the last will of the deceased, and plaintiffs, who claimed as beneficiaries of an alleged trust created by the deceased. The insurance company had paid into court the proceeds of the policy subject to the determination of the rights of the rival claimants. The trial court entered its judgment declaring the trust in favor of plaintiffs, appointing the Crocker First National Bank of San Francisco as trustee in the place of the San Francisco Bank, which had been named as trustee in the trust agreement executed by the deceased but had declined to act as such trustee, and awarding plaintiffs attorneys' fees and costs to be paid out of the trust funds. The defendant executor appeals from said judgment.

The facts appear in the findings of the trial court as follows:

## "III.

"That said Frances Tyler Shaw during her lifetime to-wit, on the 18th day of July, 1927, insured her life with the defendant Pacific Mutual Life Insurance Company of California in the sum of $15,000.00; that the death benefits of said policy were payable to Francel Van Dyke Shaw and Thomas Van Dyke Tyler Shaw, children of said insured. That said policy contained the following change of beneficiary provision, to-wit: 'Subject to the rights of any assignee, the insured may, from time to time, while this policy is in force, designate a new beneficiary by filing a written notice thereof at the home office of the company, accompanied by this policy and endorsement. Such change shall take effect on the endorsement of the same on this policy by the company and not before. Should there be no beneficiary living at the time this policy becomes a claim by death, the proceeds hereof shall be paid to the executors, administrators or assigns of the insured.'

## "IV.

"That thereafter in accordance with the provisions of said life insurance policy said Frances Tyler Shaw on the 1st day of November, 1930, changed the beneficiary of said policy to the American Trust Company, and at said time, by an agreement in writing, created a trust of the death benefits of said policy, naming said American Trust Company as trustee, which said agreement of trust at the time of its revocation as hereinafter found, named the plaintiffs herein as the beneficiaries of said trust; that the endorsement on the policy changing the beneficiary to the American Trust Company, among other things, contained the following provision: 'Should the trust be terminated and notice thereof given to the company, the death benefit will be paid to the executors, administrators or assigns of the insured. The payment to and receipt of the trustee, or in case of notice that the trust has been terminated, payment to and receipt of the executor, administrator or assigns of the insured shall be a full discharge of the liability of the company hereunder.'

## "V.

"That thereafter, on or about the 9th day of June, 1933, said Frances Tyler Shaw, in accordance with the provision

of said trust naming the American Trust Company as trustee, revoked said trust with the American Trust Company, but with the intention of creating a new trust with the San Francisco Bank, of which new trust the plaintiffs herein would likewise be the beneficiaries.

"That on said 9th day of June, 1933, upon the revocation of said trust as hereinbefore set forth, the duties and obligations of said American Trust Company ceased, and since said date said American Trust Company has had no interest either as trustee or otherwise in the said policy of insurance or in the death benefits payable thereunder, and said American Trust Company has no interest in the death benefits paid under said policy, or any duties, liabilities or obligations with respect to any of the subject matter of this litigation.

"VI.

"That on or about June 12, 1933, said Frances Tyler Shaw signed a standard form of notice of change of beneficiary required by the provisions of said policy of insurance, and by said notice of change of beneficiary named the San Francisco Bank as the beneficiary of the death benefits of said policy. Said Frances Tyler Shaw, at or about the time of the signing and execution of said notice of change of beneficiary, instructed her attorney James E. Colston to prepare an agreement of trust between herself and the said San Francisco Bank, under the terms of which said San Francisco Bank would hold the said death benefits when paid to it by the said Pacific Mutual Life Insurance Company, in trust for the plaintiffs herein. That thereafter, on or about September 1, 1933, said James E. Colston, in accordance with the instructions of said Frances Tyler Shaw, did prepare such an agreement and thereafter on or about September 8, 1933, said Frances Tyler Shaw signed said trust agreement so prepared, which said trust agreement reads in words and figures as follows."

(Here follows "Trust Agreement" executed by deceased in favor of plaintiffs as beneficiaries and naming the San Francisco Bank as trustee.)

"VII.

"That after said Frances Tyler Shaw signed said trust agreement she instructed the said James E. Colston as her attorney to cause the said Pacific Mutual Life Insurance

Company to endorse on said policy of insurance the change of beneficiary to the San Francisco Bank and to cause the said San Francisco Bank to accept said trusteeship. That said James E. Colston, in accordance with the instructions of said Frances Tyler Shaw, did on or about the 12th day of September, 1933, forward to the said Pacific Mutual Life Insurance Company the following documents:

"(1)  The policy of insurance heretofore referred to, (2) the notice of change of beneficiary naming the San Francisco Bank as beneficiary, which said notice of change of beneficiary had theretofore been signed by said Frances Tyler Shaw, and (3) the trust agreement previously signed and executed by the said Frances Tyler Shaw, which said trust agreement named the plaintiffs herein as the beneficiaries of said trust. That said James E. Colston did at the time of the forwarding of said documents in accordance with the instructions of said Frances Tyler Shaw instruct the said Pacific Mutual Life Insurance Company to endorse said change of beneficiary on said policy and after making said change to forward the said policy, together with the trust agreement, to the said San Francisco Bank for its acceptance. That said Pacific Mutual Life Insurance Company, upon the receipt of said documents, accompanied by said instructions, in violation of said instructions, failed to endorse the change of beneficiary upon said policy, but forwarded to said San Francisco Bank the notice of change of beneficiary and the trust agreement with the request that said San Francisco Bank also sign the request for change of beneficiary and sign and certify said trust agreement.

"That said San Francisco Bank, upon the receipt of said notice of change of beneficiary and of said trust agreement refused to sign said trust agreement and accept said trust for reasons of its own, and notified the said James T. Colston to that effect and informed said attorney that before accepting said trust it desired to redraft said trust agreement. That on October 11, 1933, and while the redrafting of said trust agreement was still undecided, the said Frances Tyler Shaw died. That said notice of change of beneficiary and said trust agreement, both of which had been signed and executed by the said Frances Tyler Shaw as hereinbefore found, were at the time of the death of said Frances Tyler Shaw in the possession of said San Francisco Bank, and had been con-

tinuously in its possession from September 13, 1933, and remained in the possession of said San Francisco Bank after the death of said Frances Tyler Shaw until October 17, 1933, at which time said San Francisco Bank returned the said documents to said James E. Colston.

"The Court further finds that said San Francisco Bank never accepted said trust and is not now and never has been under any obligation, duty or liability with regard to said policy of insurance or said death benefits payable thereunder, or with the subject matter of this litigation; that the said request for change of beneficiary and the said Trust Agreement were never returned to the Pacific Mutual Life Insurance Company, nor were they in its possession at the time of the death of said deceased, nor at any time after the 13th day of September, 1933.

"VIII.

"That on or about the 11th day of December, 1933, the present action was commenced by the plaintiffs herein for the purpose of establishing a trust in their favor in the death benefits of said life insurance policy. That thereafter said Pacific Mutual Life Insurance Company filed a cross complaint in said action and by appropriate proceedings had thereafter a judgment of interpleader was entered, and the death benefits of said policy, to-wit, the sum of $13408.44 was, at the request of said insurance company and by order of this court, paid into this court, and is now in the possession and control of this court, and said Pacific Mutual Life Insurance Company is now and was at the time of the payment of said death benefits into this court, discharged from all further liabilities or obligations under said policy of insurance.

"IX.

"The court further finds that continuously from the date of the issuance of said policy, to-wit, July 18, 1927, to the time of the death of said Frances Tyler Shaw, that said Frances Tyler Shaw showed a continuous intent that her son, Thomas Van Dyke Tyler Shaw, should be one of the beneficiaries of the death benefits to be paid by said Pacific Mutual Life Insurance Company under the terms of said policy, and from August 10, 1931, likewise showed a continuous intent that Catherine De Journel should be one of the beneficiaries of the death benefits of said policy of insurance."

As conclusions of law, the trial court concluded that "the delivery of the notice of change of beneficiary and of the trust agreement, both of which had been signed by said Frances Tyler Shaw, was made under her instructions and that said delivery was not a limited or conditional delivery of said documents by the said Frances Tyler Shaw but was a valid and complete delivery to an outside party for the purpose of creating a trust in favor of plaintiffs in this action in accordance with the terms of said trust agreement". The trial court further concluded that said deceased thereby created "a valid and existing trust of the death benefits of the life insurance policy" and further concluded that "the fact that said Pacific Mutual Life Insurance Company failed to endorse the change of beneficiary on said policy and the said San Francisco Bank refused to act as said trustee, does not, as a matter of law, affect the validity of a trust so established". Judgment was therefore entered as above indicated.

Appellant attacks certain findings of the trial court claiming that said findings are not supported by the evidence. A review of the evidence, however, convinces us that it was ample to sustain every material finding of the trial court above set forth. It is further claimed that the findings do not support the judgment, but we are of the opinion that the foregoing findings do support the judgment as entered.

In urging the invalidity of the trust, appellant seems to contend most seriously that the instrument creating the trust was incomplete and that "there was no delivery". We find no merit in these contentions. It is true that the trust instrument was drawn in form to be signed by the San Francisco Bank as trustee and that the amount of the compensation to be paid to the trustee was left in blank. But the fact that the trustee had not executed the instrument and thereafter refused to act cannot affect the validity of the trust. As was said in *Smith* v. *Davis*, 90 Cal. 25, at page 33 [27 Pac. 26, 25 Am. St. Rep. 92]: "The assent of the trustee is not necessary to the validity of the trust. He may refuse to act, be unable to comply with the statute, or die, and in such or similar cases a court of chancery will execute it.'" (See, also, 65 Cor. Jur. 312.) Even the omission to name a trustee is not fatal for a trust will not be allowed to fail for want of a trustee even though none be named.

"It is sufficient if the subject matter of the trust, the purpose thereof, and the persons beneficially interested are indicated with reasonable certainty." (*Estate of McCray*, 204 Cal. 399 [268 Pac. 647].) It follows that the mere omission to fix the compensation of the trustee by the trust instrument does not invalidate the trust. Under some circumstances, as in a case where it appears from the evidence that the trustor unquestionably intends that the consent of the trustee shall be a condition precedent to the creation of the trust, the trust might be held not to come into existence until such consent is obtained, but the trial court was justified in finding and concluding that such was not the case here. The trust instrument read, "Witnesseth: The trustor has conveyed or intends to convey, assign, and transfer, *and by these presents does convey, assign, and transfer*" the policy to the trustee named. The policy, the notice of change of beneficiary to the San Francisco Bank duly executed by the trustor and the trust instrument duly executed by the trustor were all delivered to the trustor's attorney with directions to "go ahead with the matter and close it up". The documents were forwarded by said attorney to the insurance company with directions to "make the necessary endorsements on the policy to effect this change". The trustor had thereby done everything within her power to create a valid trust with respect to the proceeds of the policy and we find no merit in appellant's claims relating to either the alleged incompleteness of the trust instrument or the alleged lack of delivery.

Appellant seems to claim the change of beneficiary was not accomplished as the policy provided "Such change shall take effect on the endorsement of the same on this policy by the company and not before." It is well settled, however, that such a provision in a policy is for the protection of the insurer; that the failure of the insurer to make the endorsement on the policy cannot defeat the rights of the new beneficiary when the insured has made a substantial compliance with the requirements for effecting a change; and that the rule should be applied with great liberality when the insurer has paid the money into court and has no further interest in the litigation. As was said in *Johnston* v. *Kearns*, 107 Cal. App. 557, at page 560 [290 Pac. 640], in quoting from *White* v. *White*, 194 N. Y. Supp. 114: "Many cases bearing on the question here involved are cited, and from an

examination of them it will appear that, while a change of beneficiaries must be made under certain formalities for the protection of the insurer, yet, in cases where the company has waived defending by interpleading, and has paid the money into court, and has no further interest in the litigation between the parties, a far more liberal rule obtains, and that courts of equity seek to do that which the insured apparently intended to have done, and to award the fund to that claimant who had the strongest claim therefor under the existing condition.'' (See, also, *Aetna Life Ins. Co.* v. *Wood*, 2 Cal. App. (2d) 579 [38 Pac. (2d) 853]; *Barrett* v. *Barrett*, 173 Ga. 375 [160 S. E. 399, 78 A. L. R. 962]; *Riley* v. *Wirth*, 313 Pa. 362 [169 Atl. 139]; *Ruggeri* v. *Griffiths*, 315 Pa. 455 [173 Atl. 396]; *Brauner* v. *Corgan*, 316 Pa. 196 [173 Atl. 397]; *Skamoricus* v. *Konagiskie*, 318 Pa. 128 [177 Atl. 809]; *Mutual Life Ins Co.* v. *Corodemos*, 7 Fed. Supp. 349.)

Appellant further contends that the trial court erred in rejecting certain evidence offered by defendant. The evidence excluded related to certain conversations between the deceased and Dr. Johnson, which conversations were had after the creation of the trust as above set forth. Assuming, without deciding, that said conversations were admissible, we find no prejudicial error in the rulings as counsel for appellant stated to the trial court that the evidence offered was ''purely corroborative'' of other testimony in the record. Appellant has not shown wherein the rulings were in any way prejudicial.

Lastly, it is contended that the trial court erred in allowing respondents to recover counsel fees and costs out of the trust estate. We need not discuss the question, for it is apparent that if a valid trust was created in favor of respondents, appellant had no interest in the trust fund and may not complain of the allowance of counsel fees and costs out of the trust fund.

The judgment is affirmed.

Sturtevant, J., concurred.