PRUDENTIAL INS. CO. OF AMER-
ICA v. QUAY et al.

QUAY v. BANK OF AMERICA NAT.
TRUST & SAV. ASS'N et al.

BANK OF AMERICA NAT. TRUST &
SAV. ASS'N v. QUAY et al.

No. 14558.

United States District Court,
S. D. California, C. D.

Sept. 30, 1953.

**64**

---

Adams, Duque & Hazeltine, by James E. Wallace, Los Angeles, Cal., for plaintiff, Prudential Ins. Co. of America.

Stanton, Stanton & Welbourn, by Louis B. Stanton, Los Angeles, Cal., for defendant and cross-claimant, Ethel La-Vern Quay.

Lillick, Geary & McHose, by Reid R. Briggs, Los Angeles, Cal., for cross-claimant and cross-defendant, Bank of America Nat. Trust & Sav. Ass.'n, as administrator of the Estate of Richard H. Quay, deceased.

Edward F. Quay, Sacramento, Cal., in pro. per.

TOLIN, District Judge.

This is an interpleader action wherein The Prudential Insurance Company of America has deposited into Court the death benefit from several insurance policies upon the life of Mr. Quay, deceased policy holder. The widow from whom Quay was separated is seeking payment of the funds to her. This is opposed by the administrator of his estate who asks that the funds be distributed to it.

On June 27, 1952, Mr. and Mrs. Quay entered into a property settlement agreement which acknowledged a marriage of more than twenty years duration and the fact that they were separated at the time of the agreement and did not propose thereafter to live together as husband and wife. The Agreement announced in its recitals:

> "Whereas, the parties are mutually desirous of *fully* determining and settling their property rights *and all other matters for the present as well as for the future  * * *.*"

(Emphasis supplied.)

and after reference to various community properties and the arrangement for a division thereof, included a paragraph wherein it was recited that " * * * the Wife * * * accepted * * * in full satisfaction and settlement of all claims and rights to property of every kind and nature which she might now or hereafter make or have and/or could otherwise make or hereafter make or have against the Husband or his estate, *whether at law or in equity or in probate,* and also in full settlement of all claims to community property which she might now or hereafter make or have or could otherwise now or hereafter make or have against the Husband or his property and in lieu of her share of any remaining community property and also as full provision for her support, maintenance and in full settlement of all claims which she might now or hereafter make or have or could otherwise now or hereafter make or have against the. Husband * * *." (Emphasis supplied.) By further language it is made clear that all future as well as present and past claims are intended to be " * * * waived, settled, liquidated, relinquished, abandoned, surrendered and released * * *", and that "no claim, right, demand or monetary benefit, homestead, probate homestead, homestead right, family allowance or other property benefit *or interest of any kind or character shall ever be claimed, asserted or sought by her against the Husband or in or to his property."* (Emphasis supplied.) (The quotation is from the Agreement.) It is noted that the wife contracted not to assert any claim in or to the husband's property. Of course this did not prevent his making a donation to her by clear action.

The matter of the husband's life insurance is additionally treated in a paragraph which includes:

> "The Wife hereby assigns, relinquishes, waives, quitclaims and transfers unto the Husband all

rights of every nature, kind and description which she may have, claim to or assert in and to all policies of life insurance issued upon the life of the Husband, a list of which is attached hereto, marked Exhibit 'D', and the Husband is hereby vested with all rights, privileges, benefits, options and elections granted to or conferred upon the Husband by any of said policies of insurance, without any incident of ownership or any claim being vested in or asserted by the Wife."

The Agreement, which contains many other provisions, leaves no doubt that Mr. and Mrs. Quay intended thereby to close out their financial arrangements and their expectancies as well as their presently vested rights. Although it might have been drawn with more succinct expression of the intention, there is no doubt that from the entire Agreement it was the understanding and expectation of the parties that each had received, or through the escrow agreed to be set up, was about to receive, the final division of property held by either or both as well as from the insurance bounty of the other. It cannot be found that each foreclosed herself/himself from receiving any gift from the other, but there is no suggestion of the likelihood of such a gift. It was necessary in order to accomplish the settlement, for the husband to borrow money for payment to the wife and there appears to have been an escrow wherein real property was involved to an extent that common experience indicates that ordinarily a few weeks expire to complete the transaction. There is no suggestion that Mr. Quay expected his early demise, but sixteen days from the date of execution of the Agreement he was dead. Sixteen days would have been a very brief time within which to work out all of the matters contemplated by the Agreement. He had not given notice of change of beneficiary to the insurance company and it is noteworthy that in one of the policies of insurance there was no beneficiary but that the death benefit was payable to the person or persons entitled thereto. This was in the manner which is not uncommon in the so-called industrial type of insurance policy.

The widow insists that she did no more than settle her property rights and that having settled them, her husband still had a privilege to make her a gift if he so desired. She then leaps to the conclusion that his failure to designate some other beneficiary has resulted in a gift to her. She relies on his inaction rather than on any affirmative acts of donation. In her brief, extensive quotation is given a decision by a divided court in which the Supreme Court of California, in Grimm v. Grimm, 26 Cal. 2d 173, at page 175, 157 P.2d 841, at page 842, said:

" * * * A wife, however, can release this community interest in the insurance policy and still be a beneficiary thereof. * * * "

The majority opinion in that case further states, 26 Cal.2d at page 177, 157 P.2d at page 843:

" * * * Since the husband has the power to revoke his will or to change the beneficiary named in an insurance policy his failure to do so ordinarily indicates that he did not wish to effect a change so that in effect his failure to act amounts to a confirmation of the will or the designation of the wife in the insurance policy. Both instruments are to be read as expressing the decedent's intentions at the time of his death. As was said in [Re] Estate of Crane, supra, 6 Cal.2d at page 221, 57 P.2d [476] at page 478, 107 A.L. R. 1101: 'It is to be remembered that although the will in which the legacy is contained had been executed prior to the date of the contract, the testator lived more than two years thereafter. And a will speaks from and as of the date of the testator's death. If the testator had not executed this will until after the date of the property settlement agreement, it would not be

reasonable to say that he was without right to make such subsequent will and thereby give additional property to his wife. But in substance and effect he did the same thing by leaving his will unchanged after the date of said contract.' Moreover, while a property settlement agreement provides for what the husband is conceding to his wife as a matter of right, frequently he is willing to grant more to her as a matter of bounty, for as recognized in Estate of Crane, supra, 6 Cal.2d at page 221, 57 P.2d 476, 104 A.L.R. 1101, the affection of spouses for each other may survive separation agreements and divorce proceedings."

Further in the majority opinion there appears, 26 Cal.2d at page 179, 157 P.2d at page 844:

" * * * The express reference in the agreement to the right of the husband to change the beneficiary indicates that there was no immediate change and that the wife would remain the beneficiary of the policy unless the husband exercised his right to change the beneficiary. It was for the husband to decide whether he wished his wife or someone else to get the proceeds of the policy. If the decedent intended that plaintiff, who was his wife for more than thirty years, should have the insurance proceeds, he would naturally suppose that his intention would be fulfilled if he did not change the beneficiary. *It is significant that he lived for several years after the agreement without making such a change.* * * *" (Emphasis supplied.)

■ In the present case the wife gave her husband a power of attorney to use in effecting a change of beneficiary. As she never was beneficiary in some of the insurance, this represents an excess of caution in at least part of the insurance. Any theory that Mr. Quay intended to keep her as beneficiary in those policies wherein she was previously named is negatived by his action in taking the power of attorney. In Sullivan v. Union Oil Co. of Cal., 16 Cal.2d 229, 105 P.2d 922, the husband had an interest in his employer's "Provident Fund". This fund provided a death benefit payable to his wife as beneficiary. The parties made a property settlement agreement which, like the one at bar, divided their properties. The "Provident Fund" was mentioned in the Agreement. The court said, 16 Cal.2d at page 237, 105 P.2d at page 927:

" * * * But the dominant and governing feature herein * * * is that of her own free will, with full knowledge of the existence of the fund and of all pertinent facts, acting under the advice and counsel of her attorney (who drafted the agreement), and for full and valuable consideration therefor, the wife had expressly agreed with her husband to forever settle and divide between them *all* their respective properties including that of the community, * * *." (Emphasis theirs.)

In considering the agreement here involved as a whole, the Court must and does find that the husband and wife expected and intended that if she survived him, she would not receive the insurance benefit. There is not a shred of evidence suggesting any overt act toward any donation to her after she gave up her legal right upon being paid a substantial consideration to do so.

■ California courts have long held that the named beneficiary may agree with the insured concerning disposition of insurance policies, and that such agreements will be given effect even though all of the formalities prescribed in the policies may not have been performed. When parties divide an estate, no inference of the type of gift Mrs. Quay claims will arise because the procedure of naming a beneficiary is not completed summarily. Especially is this so where at least one policy had no provision for a beneficiary.

In Meherin v. Meherin, 99 Cal.App.2d 596, 222 P.2d 305, the insured husband and his wife who was the beneficiary made a property settlement agreement which provided, 99 Cal.App.2d at page 597, 222 P.2d at page 306:

> " '1. The wife hereby released to the husband and he shall be entitled to all the interest in and to that certain insurance policy with the Metropolitan Life Insurance Company, bearing the number 918996-7-C, and the wife does hereby grant, assign and sell to the husband all of her right, title and interest in and to said policy and the interest and benefits therein. Wife further agrees to execute any instrument or documents required by the husband or the Metropolitan Life Insurance Company to carry out the intention of this paragraph."

No request was made for any other instrument. The husband died about a year and a half after the property settlement.

The court held that the wife was not entitled to the policy proceeds, and said, 99 Cal.App.2d at page 598, 222 P.2d at page 306:

> "The property settlement agreement was quite comprehensive and clearly established that a complete and final settlement was intended. * * *"

The court decided, 99 Cal.App.2d at page 599, 222 P.2d at page 307, " * * * that whether 'any instrument or document' was 'required by the husband or the Metropolitan Life Insurance Company to carry out the intention of this paragraph' was for them to determine and did not affect the disposition of the property as the contract elsewhere provided." In the case before this Court the insured took his wife's power of attorney for use if the Insurance Company required it. She agreed not to assert *any claim to any of his property.* The insurance lost its character as community property and became his separate estate on the making of that Agreement.

The effect of a property settlement agreement was considered in Chilwell v. Chilwell, 40 Cal.App.2d 550, at page 553, 105 P.2d 122 at page 123:

> "The appellant contends that since the insured had not changed the beneficiary in the manner provided for in the policy and since the original beneficiary died before the insured, the insurance was payable to his estate, and that nothing in connection with a divorce proceeding changed this result or affected this legal situation. We are here concerned, however, not merely with the terms of the insurance contract, but with the terms and effect of a property settlement between parties to a divorce proceeding which was carried into and made a part of a judgment of divorce. The appellant relies upon McLaughlin v. McLaughlin, 104 Cal. 171, 37 P. 865, 43 Am.St.Rep. 83, in which it was said that the right to the proceeds of an insurance policy vests in the beneficiary at the death of the insured and that the insurer has no power, by stipulation or otherwise, to change or affect that right. While this is true, a question often remains as to the person or persons in whom the right vests and this question is often affected by equitable rules. *While this insurance contract is controlled by the situation as it was at the death of the assured, the property settlement which the parties here made and which was reduced to judgment is still effective and controls the disposition of the proceeds of the policy. This property settlement agreement was entered into by all of the parties who had any interest in the proceeds of the policy, and the making of such an agreement has frequently been held to be, in effect, an equitable assignment of such insurance money.*" (Emphasis supplied.)

If not an equitable assignment, which it appears to be and which the Court holds it to be, the Agreement at least raises

an estoppel in the circumstances of the Quay transactions.

The policy provisions for notice to the insurer are for the protection of the insurer. They are not applied as between claimants when to do so would violate equitable precepts and the insurer has paid the proceeds into court and gained the protection of interpleader decree. The rule in this regard appears in White v. White, 194 N.Y.S. 114, 117, quoted and followed in Johnston v. Kearns, 107 Cal.App. 557, 560, 290 P. 640:

> " * * * while a change of beneficiaries must be made under certain formalities for the protection of the insurer, yet, in cases where the company has waived defending by interpleading, and has paid the money into court, and has no further interest in the litigation between the parties, a far more liberal rule obtains, and * * * courts of equity seek to do that which the insured apparently intended to have done, and to award the fund to that claimant who had the strongest claim therefor under the existing conditions."

The same statement is quoted with approval in Shaw v. Johnson, 15 Cal.App.2d 599, 606–607, 59 P.2d 876.

■ In the Grimm case, the insurance policy was treated in the settlement agreement merely as one item of the community property, and the court said, 26 Cal.2d at pages 178–179, 157 P.2d at page 844:

> " * * * Under this provision the insurance policy was like any other community property that was to become separate property of the husband. There was no indication that anything else was intended with respect to the policy. * * * "

In our case, the property settlement provisions respecting the insurance are entirely separate from those dealing with the community property. They are more like the separate disposition of the insurance policy in the more recent case of Meherin v. Meherin, 99 Cal.App.2d 596, 222 P.2d 305. The court in the Grimm case stated that the inference of donation was strengthened by over two years inaction by the husband. Sixteen days is a much shorter time. When mere lapse of time is relied upon to give rise to an inference of the kind sought, substantial time must elapse. Grimm v. Grimm does not support the Quay facts.

■ Ethel LaVern Quay is estopped from taking the insurance benefits in this case.

Findings and Judgment in accordance with this memorandum will be prepared by counsel for Bank of America National Trust & Savings Association, as Administrator of the Estate of Richard H. Quay, deceased, which the Court finds entitled to the insurance benefit.