238 F.2d 417
 CONNECTICUT GENERAL LIFE INSURANCE CO., Plaintiff in Interpleader,
v.
Kathryn Penn HARTSHORN, Appellant, J. P. Hartshorn, as
Administrator of the Estate of Owen M. Hartshorn,
Deceased, Appellee.
 No. 14869.
 United States Court of Appeals Ninth Circuit.
 Nov. 2, 1956.
Rehearing Denied Dec. 28, 1956.
 
 Bertram J. Brown, Francis J. Maher, San Diego, Cal., for appellant.
 Joseph L. Fainer, Paul H. Wayte, Los Angeles, Cal., for appellee.
 Before STEPHENS, FEE and CHAMBERS, Circuit Judges.
 STEPHENS, Circuit Judge.
 
 
 1
 This action arose out of conflicting claims to the proceeds of a group life insurance policy in the amount of $10,000.00 issued by the Connecticut General Life Insurance Company on the life of Owen M. Hartshorn, now deceased.
 
 
 2
 The action was filed by the insurance company as an action in interpleader under Section 1335 of Title 28 U.S.C.A. The proceeds of the policy rest in the registry of the court, the insurance company raising no objection to the payment thereof to the party held entitled thereto. The policy in suit was held by the District Court to be payable to the estate of Owen M. Hartshorn. Kathryn Penn Hartshorn, who is here appealing, is the divorced wife of the decedent. J. P. Hartshorn is the brother of the deceased, and administrator of the deceased brother's estate. The brother was a party to the action below and he is here an appellee in his administrative capacity.
 
 
 3
 The appellant and the insured had known each other for nearly a third of a century. Each had married and each had lost a mate by death. They were married November 9, 1946. Evidently they experienced difficulty in adjusting themselves each with the other and on April 23, 1948, they entered into a written property settlement. An interlocutory divorce followed on August 24, 1948, and a final divorce decree was entered on the 2nd of September, 1949.
 
 
 4
 During much of the period of time in which the facts of this case were occurring, the insured decedent was office manager of the Collins-Powell Company of Beverly Hills, California, and as such performed the duty of processing and administering an employee-group insurance program which was maintained with the Connecticut General Life Insurance Company. The employees had available to them a variety of group insurances, inclusive of group life, group accidental death and dismemberment, group hospitalization and surgical expense, and group accident and sickness. The decedent was covered by five group policies, and the group life insurance policy, Number G 7019 for $10,000.00 is directly involved in this case.[1]
 
 The Property Settlement Agreement
 
 5
 The property settlement agreement provided that the wife (appellant here):
 
 
 6
 '* * * does hereby release, remise, quitclaim, and relinquish forever any and all claims and rights, present or future, from the estate of the Husband, and any and all other property claims of any kind and character whatsoever against the Husband * * * (there were like releases from the husband to the wife) * * * nor shall the mutual releases herein mentioned with reference to the claims of said parties against the property or estate of the other of said parties in any manner become invalid. The Wife does hereby also release, remise, quitclaim and relinquish forever all right, title, interest and claim of every kind and nature whatsoever, including any and all rights of inheritance or rights as the Wife of the Husband which the Wife now has or may hereafter acquire either as community property rights, courtesy, homestead, family allowance as heir at law of the Husband or as the Wife of the Husband, or otherwise, in and to any property which the Husband now has or may hereafter acquire or which shall be a part of the estate of the Husband in the event of his death, whether the same be real or personal property or separate property of the Husband or property of any kind acquired by the Husband in which the Wife might now or hereafter have any interest. The Wife does further hereby waive and relinquish any and all right to act as executrix, administratrix, or administratrix with the will annexed of the estate of the Husband.'
 
 Paragraph nine:
 
 7
 'Each of the parties does hereby assign, transfer and set over to the other all the right, title and interest of each party in and to and under any and all policies or contracts of insurance, if any there may be, wherein the other is named insured, and each of them waives and relinquishes all rights as beneficiary of and every right to claim that any such insurance now is or will hereafter be community property.'
 
 Paragraph ten:
 
 8
 'Each of the parties agree to acknowledge and deliver to the other when so required, any and all documents and papers which may be necessary or which may be required by any purchaser to enable each of the parties to receive, sell or dispose of property acquired by each of the parties under the terms of this agreement, or to otherwise carry into effect any of the terms of this agreement.'
 
 Paragraph fifteen:
 
 9
 'The parties declare that each has had independent legal advice by counsel of his or her own selection; that each fully understands the facts and has been fully informed of all legal rights and liabilities; that after such advice and knowledge each believes the agreement to be fair, just and reasonable, and that each consents to the agreement fully and voluntarily.'
 
 
 10
 Owen M. Hartshorn, the insured, died intestate on May 30, 1953, and the records of the insurance company showed 'Kathryn Geer Penn Hartshorn', the divorced wife, as the beneficiary of the policy in suit. And there had been no change of beneficiary on the company's records, and the company could not produce any request for any change of beneficiary and did not claim that there had been any change of beneficiary.
 
 
 11
 At the trial the brother, J. P. Hartshorn, produced a certificate of group life insurance covering the same insurance as to which the company records showed Kathryn Geer Penn Hartshorn the beneficiary. Upon the certificate there was endorsed in typewriting the words 'Beneficiary J. P. Hartshorn' and the words 'Effective Oct. 26, 1948', or just a month after the interlocutory decree. It was then shown that the provision in the policy as to change of beneficiary, so far as the insurance company's home office records and those of the local Los Angeles office showed had not been complied with. That is, the home office records did not show that insured had requested a change of beneficiary and the local office's card upon which a beneficiary change would ordinarily be noted showed no change to the brother or to anybody.
 
 
 12
 It should here be noted that the certificate showing on its face J. P. Hartshorn as beneficiary according to the brother's testimony, was found by him in insured's desk in the latter's apartment after insured's death. Among the papers so found there were other forms of certificates with no beneficiary named and no effective date upon them. Upon the certificate form bearing the brother's name appeared a rubber stamp impression as follows:
 
 
 13
 'All prior certificates of insurance issued for the above named employee under the policy or policies referred to herein are hereby cancelled being replaced by this certificate.'
 
 
 14
 The other forms had this same wording, not stamped, but printed upon them.
 
 
 15
 These forms, according to the company's employee, were kept under lock and key and if a form was given out, it contained the word 'Specimen'. None of the blanks found in decedent's desk contained that word. The witness testified her conclusion that because of this rubber stamp impression the certificate must have been issued by the company, notwithstanding the failure of the office records to show that fact. The court's questions and the witness' answers seem important on this phase and we quote them in the margin.[2]
 
 
 16
 It was discovered by the insurance company that deceased insured had executed a change of beneficiary for his group hospital and surgical expense insurance, policy GH-5525. This policy does not provide for a beneficiary as payments are only made to the living insured. It was argued, therefore, by the brother that the decedent erroneously executed that form when in reality he meant to designate his brother as beneficiary of his group life policy G-7019. The appellant argued that it could be that the decedent intended to name his brother as beneficiary of his group accidental death and dismemberment policy GD-5468, which does provide for a beneficiary, as do all life insurance policies, or in the alternative, that he really intended to deal with the group hospital expenses policy and in effect was making an assignment to his brother of the benefits of the policy which might have accrued and were due and owing him upon his death.[3]
 
 
 17
 At the conclusion of the trial, the District Judge held that the appellant had waived and relinquished her rights under the group life policy here in dispute and was barred and estopped from asserting any rights as beneficiary under the policy due to the legal effect of the property agreement entered into between the decedent insured and appellant. The trial judge further held that Owen Hartshorn, the decedent, intended to name his brother, J. P. Hartshorn, as beneficiary of the group life policy, but that there was neither actual nor substantial compliance with the provisions relating to the change of beneficiary as required in the group life policy and that the brother therefore did not take as beneficiary of the policy. The brother is not appealing. The proceeds were ordered to be paid to the decedent's estate.
 
 Legal Effect of the Property Settlement
 
 18
 In general terms, each party assigned, transferred and set over to the other all the rights, title and interest of each party in and to and under any and all policies or contracts of insurance, 'if any there may be'. There is no specific mention or identification in any manner in the agreement as to the policy in suit. 'Insurance' is referred to not as acknowledged items of property, but merely by the language, 'if any there may be'.
 
 
 19
 We take it as a fixed principle of law that the waiver of a right or entitlement to property goes only to rights or property as to which the waiving party has knowledge. The appellant testified that she never heard of this $10,000.00 policy (the policy in suit) until after the property settlement and after the divorce. She had heard of a $2,000.00 policy with another insurance company, the New York Life Insurance Company, in which she was at one time named as beneficiary, and which, significantly,[4] was actually and regularly changed from her name to that of the brother as beneficiary. There isn't a word or circumstance in the record to the effect that she knew anything about the policy in suit until long after the settlement and divorce. The divorced wife testified that while her divorced husband was visiting her in San Diego, he first told her of the $10,000.00 policy and told her that he had not changed the beneficiary from her to anyone else. And this testimony is consistent with the proved facts in the case that he was courting her for remarriage practically up to the day of his death.
 
 
 20
 It is, of course, a firm fact of the case that decedent knew of the policy and that his former wife was named as beneficiary in the policy when the property settlement agreement was drawn and executed. It was his duty at that time to reveal those important facts. It is fairly clear from the testimony that the wife was not taken into decedent's full confidence as to his insurance subscriptions. The property settlement did not reveal whether there were any policies. Necessarily, decedent knew positively that there was no 'if' or uncertainty to them. Therefore, the settlement was not entered into after a full and fair disclosure of the facts as to which the parties were dealing, in that the disclosure by decedent to the former wife of the existence of the $10,000.00 policy naming her as beneficiary came long after the signing of the settlement agreement and unquestionably while he was paying court to her.
 
 
 21
 We find in Thorp v. Randazzo, 1953, 41 Cal.2d 770, 264 P.2d 38, at page 41:
 
 
 22
 'Expectancies under a will or an insurance policy may be regarded as waived only when it appears that the attention of the parties was directed to such expectancies and their intention to disclaim future rights which might develop from such expectancies is made clear in their property settlement agreement. In re Estate of Crane, supra, 6 Cal.2d 218, 221, 57 P.2d 476, 104 A.L.R. 1101; Grimm v. Grimm, supra, 26 Cal.2d 173, 177, 157 P.2d 841. But in the present case (the cited case contrary to our case) specific reference was made in the agreement to the insurance policy, and plaintiff expressly waived all claim to 'any benefits that she may have at present, or which may hereafter be derived from' such policy. This language clearly indicates that the parties' attention had been directed to the expectancy of the insurance proceeds, and that it was intended that plaintiff waive all interest therein, present and future. Thus, 'the parties agreed that no rights were to accrue to her, even though she remained the beneficiary at the time of the husband's death.' Grimm v. Grimm, supra, 26 Cal.2d at page 175, 157 P.2d at page 842. In short, as in Sullivan v. Union Oil Co. of Cal., supra, 16 Cal.2d 229, 237, 105 P.2d 922, plaintiff agreed to a present divestment of all claims that she might otherwise have in the insurance policy.
 
 
 23
 'It must be further remembered that the policy here (in the quoted case wherein it was held that the named beneficiary should not take the proceeds) lapsed * * * and that deceased's tender of a premium payment some two months later was rejected * * *.'
 
 
 24
 In our case, the insurance policy was kept in good standing for more than five years after the property settlement agreement and throughout this period of time the former husband, an experienced insurance man, did not, according to the belief of the trial judge, have a change made on the records of the company.
 
 
 25
 In Grimm v. Grimm, 26 Cal.2d 173, 157 P.2d 841, 843, it was stated:
 
 
 26
 'This court and other courts have therefore applied to property settlement agreements the rule that general expressions or clauses in such agreements are not to be construed as including an assignment or renunciation of expectancies and that a beneficiary therefore retains his status under an insurance policy or under a will if it does not clearly appear from the agreement that in addition to the segregation of the property of the spouses it was intended to deprive either spouse of the right to take property under a will or an insurance contract of the other * * * In Estate of Crane, 6 Cal.2d 218, 57 P.2d 476, 104 A.L.R. 1101, this court set forth the considerations that command the rule that expectancies under a will or an insurance policy are regarded as waived only when it appears that the intention of the parties was directed to such expectancies and their intention to disclaim future rights that might develop from such expectancies was made clear in the contract.'
 
 
 27
 In the agreement between decedent and appellant it was stated that the parties 'assign, transfer, and set over to the other all the right, title, and interest of each party in and to and under any and all policies or contracts of insurance, if any there may be, wherein the other is named insured, and each of them waives and relinquishes all rights as beneficiary of and every right to claim that any such insurance now is or will hereafter be community property.'
 
 
 28
 There is nothing in the record before us or in the property agreement itself which indicates that the 'attention' of Mrs. Hartshorn 'was directed to such expectancies and their (her) intention to disclaim future rights that might develop from such expectancies was made clear in the contract'. Estate of Crane, 6 Cal.2d 218, 57 P.2d 476. Mrs. Hartshorn testified that she knew of the $2,000.00 policy with New York Life Insurance Company, but did not know of the policy in suit. No evidence was offered to rebut this showing or statement. Mrs. Hartshorn may very well have merely intended to deal with the New York Life Policy.
 
 
 29
 We have closely read all the California cases in point and find without exception that in all cases where it was held that the wife was estopped or unable to recover the proceeds under a life insurance policy in which she was named as beneficiary at the death of the husband as a legal result of a property agreement, that the policy or policies were specifically identified or listed. In Meherin v. Meherin, 99 Cal.App.2d 596, 222 P.2d 305, 306, the wife released her interest 'to that certain insurance policy with the Metropolitan Life Insurance Company, bearing number 918996-7C'. In Thorp v. Randazzo, 264 P.2d 38, 39, the wife waived 'all claims to any benefits that she may have at present, or which may hereafter be derived from the following described life insurance policies upon the life of the first party * * *.' In Prudential Insurance Co. v. Quay, D.C.Cal., 115 F.Supp. 63, 65, the wife waived and relinquished all rights 'in and to all policies of life insurance issued upon the life of the Husband, a list of which is attached hereto, marked Exhibit 'D' * * *.' In Sullivan v. Union Oil Co. of California, 16 Cal.2d 229, 105 P.2d 922, it was conceded by the wife that the 'Provident Fund' involved in the case was included in the property agreement and the only issue was whether the agreement encompassed the community property rights of the wife as well as the expectancy that she had as the designated beneficiary of the 'Provident Fund'. There was no question that the wife knew of the existence of the 'Fund' when she executed the agreement.
 
 
 30
 The Washington case of United Benefit Life Insurance Company v. Price, 46 Wash.2d 587, 283 P.2d 119, also involved the question whether a former wife had divested herself of all interest as beneficiary of an insurance policy awarded to the husband by a divorce decree. The policy in the case was known to the wife and conceded to be community property at the time of the divorce. The court in In re Buchman's Estate, 1955, 132 Cal.App.2d 81, 281 P.2d 608, 612, at page 618 in discussing whether or not the wife agreed to forego any part of the husband's estate that might come to her by will saw fit to contrast the different provisions of the property settlement agreement in order to show that the parties when they intended to waive or relinquish a particular expectancy knew what language was necessary. In that case it was stated that the wife did not waive or relinquish her right to take by the husband's will but did waive her expectancies under three insurance policies. But we point out again that the provision wherein the wife was held to have waived her expectancies in the policies again stated that the wife transferred, conveyed, and assigned to the husband all right, title and interest 'in the list of life insurance policies attached hereto, marked Exhibit B, * * *.'
 
 
 31
 In the instant case the agreement made no mention of any specific policy but merely stated 'if any there may be'. We are of the opinion that this language is not sufficiently definite and certain to say that the 'attention' of Mrs. Hartshorn was called to such an insurance policy and her expectancy in the policy and her intention to disclaim future rights made clear. We also note that the words 'all rights as beneficiary of' in paragraph nine of the agreement dealing with insurance, do not specify whether this is in reference to present rights or in future rights or expectancies. In fact these words were set in immediate juxtaposition with other words referring to present rights in community property. Paragraph nine reads in part:
 
 
 32
 '* * * and each of them waives and relinquishes all rights as beneficiary of and every right to claim that any such insurance now is or will hereafter be community property.'
 
 
 33
 It is entirely possible that the parties were referring to the right of appellant to remain as beneficiary or any present right she might have in the policy and not the ability of her to take the proceeds if she should so remain as beneficiary at the time of decedent's death.
 
 
 34
 We have closely examined the transcript of record and find that appellant testified that she knew nothing of the policy and there is no evidence to rebut it. Since she was the named beneficiary it was the burden of appellee to show that she did in fact have knowledge of the policy when she signed the agreement. As we have already said there is not one scintilla of evidence in the record to indicate that appellant knew of the policy when the agreement was executed.
 
 
 35
 We, therefore, hold, as a matter of law, that the property agreement waiver and relinquishment does not embrace the policy in suit for the reason that it does not appear that appellant's attention was called to such policy or that she knew of it at the time she executed the agreement.
 
 
 36
 We have held that the property agreement did not effect appellant's status as the beneficiary of the policy in suit. But even if we are wrong as to that and that the agreement is ambiguous the evidence in the case could well support a finding to the effect that it was the intention of the decedent to exclude the policy from the agreement. Further that whether he did or did not intend that the policy was to be included in the agreement at the time wnen it was signed, the evidence shows almost by demonstration that long before his death and at the moment of death he had intended that she should be not only the named but the actual beneficiary of the policy.
 
 
 37
 As pointed out by the trial judge, the decedent could by his own volition arrange for her to receive the benefits. Insured had a right to rely upon the terms of the policy to wit, that the change of beneficiary could only be accomplished through his own written request for such change to the insurance company. The company could waive this requirement and it did so by depositing the proceeds in court, but the company's waiver did not affect insured's rights to rely upon such a provision, nor the rights of the appellant.
 
 
 38
 It is unquestioned that appellant, Mrs. Hartshorn, was the recorded, named beneficiary of the policy on the insurance company's records at the moment of the insured's death. Even though the court concluded that insured had possession of a certificate which named the brother as beneficiary, in the words of the court's finding, there was not 'either an actual or substantial compliance with the provisions relating to the change of beneficiary', it would seem reasonable to conclude (if the court's finding is correct) that insured held the certificate tentatively and never intentionally perfected the change indicated on the certificate. This situation could indicate that insured never firmly made up his mind to make the change and is some evidence of confirmation of the designation of appellant as beneficiary, and also of the fact that decedent did not intend at the time the agreement was entered into that the appellant waive her expectancy in the policy.[5] Grimm v. Grimm, 157 P.2d 841.
 
 
 39
 It was said in Estate of Crane, 1936, Cal., 6 Cal.2d 218, 57 P.2d 476 that:[6]
 
 
 40
 'Property settlement agreement whereby wife relinquished all right or claim to any interest in property of husband by virtue of her status as wife or widow or as heir of husband did not preclude wife from taking bequest under her husband's will, notwithstanding will had been drawn prior to the property settlement, since will speaks as of date of testator's death (Civ.Code, §§ 1292, 1298, 1299).'
 
 
 41
 'Consideration received by wife pursuant to property settlement agreement whereby wife relinquished all claim in estate of husband by virtue of her status as wife or widow or heir of husband held not an ademption of bequest to wife (Civ.Code, § 1351).'
 
 
 42
 In the text of the opinion of the Crane case just cited, we find, 57 P.2d at page 478, the following:
 
 
 43
 'It is to be remembered that although the will in which the legacy is contained had been executed prior to the date of the contract, the testator lived more than two years thereafter. And a will speaks from and as of the date of the testator's death. If the testator had not executed this will until after the date of the property settlement agreement, it would not be reasonable to say that he was without right to make such subsequent will and thereby give additional property to his wife. But in substance and effect he did the same thing by leaving his will unchanged after the date of said contract. The reasonableness of his conduct in this respect is reinforced by the evidence, which shows a continuance of affectionate relations between the parties * * *.'
 
 
 44
 The principle is the same as to the beneficiary of an insurance policy. Grimm v. Grimm, supra. Here decedent could have desired appellant to receive the proceeds of the policy on his death and the easiest way for him to accomplish this result would be to leave the policy as it stood on the books of the company. It is not logical to say that if he wanted appellant to benefit he would have had to redesignate her as beneficiary.
 
 
 45
 In the Crane case the expiration of time from the date of the property settlement agreement to the date of the testator's death was two years, while the time between the date of the agreement and the insured's death in the instant case was over five years and over four had elapsed since the date on the questioned certificate found in the insured's desk.
 
 
 46
 We proceed to a brief recital of the continued affectionate relations between the former spouses in our case, all of which is diametrically opposed to the view that decedent intended to cut appellant from enjoyment of the insurance proceeds. It fits in exactly with his action of leaving the beneficiary unchanged.
 
 
 47
 Not long after the final decree of divorce was issued and during the five year period until insured's death, an admirable and glowing relationship existed between the former spouses. Although the former wife had removed to San Diego, California, and the former husband had continued to reside in Los Angeles, he visited her in San Diego over many week ends and gave her many presents and sent her communications demonstrating beyond question a continuing fondness and affection.
 
 
 48
 We narrate and quote briefly a part of the former wife's testimony: 'Mr. Hartshorn came down to my home (in San Diego) for Thanksgiving dinner-- 149.' 'He visited me upon an average of two or three times a month.' These visits continued 'up until he was taken ill', about the first of May, 1953. 'He was down at my home when he was taken ill.' They talked of remarriage through 1950, 1951, and 1952. She promised to remarry him 'when he got well'. 'About a year and a half before the last time he was down here * * * he told me he had never changed my name as beneficiary on a $10,000.00 insurance policy * * * Well, I should think about three months before the last time I saw him, he talked to me about it again.'
 
 
 49
 We are convinced from a full review of the case and the evidence taken as a whole that the policy in suit was not brought to appellant's attention as required in a written property agreement. And the evidence, as we have said, is more than convincing that even if it should be held, as a matter of law (and we think it cannot be so held) that appellant waived all present and future rights in and to any benefit from the policy in suit, nevertheless since the designation of appellant as the beneficiary was never changed and since the decedent, an experienced insurance man did not do what he knew should be done to change the beneficiary, and added to these facts the eloquence of the long period in which appellant and decedent were closely and affectionately associated, we can come to no other conclusion than that a mistake was made by the trial court in holding that decedent intended that appellant should not enjoy the proceeds of the policy in suit. United States v. U.S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746.
 
 
 50
 The trial court speaks of decedent's attempt to name his brother as beneficiary. We think the evidence does not justify the conclusion that decedent really attempted to name his brother as beneficiary but failed. Since what was done as to the brother was ineffectual as found by the trial judge, and was not followed up by action which showed an executed intent to make the brother beneficiary, it could have no weight whatever as to the named beneficiary. Cook v. Cook, 17 Cal.2d 639, 111 P.2d 322; Johnston v. Kearns, 107 Cal.App. 557, 290 P. 640; Shaw v. Johnson, 15 Cal.App.2d 599, 59 P.2d 876; Pacific Mutual Life Ins. Co. v. Rotondo, D.C., 96 F.Supp. 197. The burden was on the party seeking to have the proceeds awarded to other than the named beneficiary. In our opinion the evidence fell far short of justifying the judicial revocation of the designated beneficiary.
 
 
 51
 Judgment reversed with directions that the proceeds of the policy be awarded to appellant in accord with this opinion. Appellant's costs should be equally divided between appellant and appellee brother of decedent as administrator of decedent's estate. The insurance company to stand its own costs.
 
 
 
 [1]
 The court found that on January 27, 1947 (roughly two months after marriage) insured 'designated said defendant (appellant herein) as beneficiary in * * * Policy G-7019, Certificate No. 4 * * * upon the life of said Owen M. Hartshorn; that some of the records of the plaintiff Connecticut General Life Insurance Company indicate that said defendant Kathryn Geer Penn Hartshorn was the sole beneficiary in said policy of Group Life Insurance and such records further indicate that said defendant has been the beneficiary thereunder since on or about January 24, 1947.' The introduction of the words 'some' and 'indicate' appear equivocal. They seem to suggest that not all of the pertinent records showed and they only indicated that Kathryn Geer Penn Hartshorn is the beneficiary. The fact is that all of the company records so far as mentioned or referred to pertaining to the subject policy G-7019 show without a flaw that Kathryn Geer Penn Hartshorn is the named beneficiary of the questioned policy
 
 
 [2]
 'The Court: I understood you to say that this stamp could not be on a certificate such as that, it was impossible unless the change of beneficiary was recorded in your records in your office
 'The Witness: That is right, sir.
 'The Court: And yet it was not impossible, because now you testify that it was not recorded, the change of beneficiary was not recorded, I understand you to say, in your records in your office?
 'The Witness: It was not recorded on the history card that we have.
 'The Court: As I understand your testimony, there must be a request for change of beneficiary, signed by the insured, is that correct?
 'The Witness: That is right, or we would never have--
 'The Court: And you don't have that there?
 'The Witness: No, sir. It could have been lost in the mail to Hartford or almost anything could have happened.
 'The Court: So that while it is your testimony that it is impossible for one of those to get out without that change in your records, in this particular case the card that you refer to in your office itself was not changed at the time this went out, and some girl may have made a mistake and not changed that, and when a request for change of beneficiary, signed by the insured, is received, it ordinarily must be in your office before it goes out. Do you think also there may have been a mistake and that may have been lost in your office here or at Hartford, is that your testimony?
 'Witness: Yes.'
 
 
 [3]
 At the trial a number of certificates of group insurance were placed in evidence. Some were given specific identification numbers and the rest were merely placed in evidence as a group. Upon examining all the certificates we find two certificates with an effective date of October 26, 1948 (the date that decedent executed the change of beneficiary form as to the Group Hospital Policy GH-5525). One of these certificates refers to the group life policy, G-7019 (this is the certificate under which the brother claims) and the other refers to the Group Accidental Death and Dismemberment Insurance Policy GD- 5468. At the trial appellant argued that if the decedent did not intend to deal with policy GH-5525 (as the brother contended) when he executed the change of beneficiary form he may very well have intended to deal with the Accidental Death and Dismemberment Insurance Policy GD-5468, which does provide for a beneficiary. We have closely read the transcript of record and find that it was not brought to the attention of appellant's counsel or the court that there was included in the group of certificates admitted into evidence but not specifically identified, a Certificate of Group Accidental Death and Dismemberment Insurance for Policy GD-5468, with an effective date of October 26, 1948, and naming the brother as beneficiary. This fact is important in that it goes toward substantiating appellant's argument that the decedent could just have easily have intended to deal with Policy GD-5468 rather than Policy G-7019 if he actually did not intend to deal with Policy GH-5525 when he executed the change of beneficiary form. This fact that there was a beneficiary form executed October 26, 1948 for Policy GH-5525 and two cerificates referring to other types of policies in evidence bearing the same date, if brought to the attention of the trial judge may very well have caused him to have reached a different conclusion as to whether or not the decedent intended to name his brother as beneficiary or to confirm his former wife as beneficiary. See note 5
 
 
 [4]
 We say significantly because the change indicates rather clearly that deceased made his contribution to his brother through the New York Life Policy. Deceased was not a novice as to insurance but had handled the administration of the group insurance program of Collins-Powell Company for some years. And it is highly unlikely that he would not have seen to it that every change he desired would have been checked by him. It is implicit in the judge's findings that he did not believe insured ever requested the company to change the beneficiary on the policy in suit
 
 
 [5]
 It is said in 28 Cal.Jur.2d Insurance § 376:
 '* * * courts of equity will seek to do that which the insured apparently intended to have done; and to award the fund to the claimant who has the strongest claim under the circumstances, especially where the insured did all he could toward complying with the formalities.' Citing Johnson v. Kearns, 107 Cal.App. 557, 290 P. 640.
 Of course, insured decedent in our case did not do all he could toward complying with the formalities as to a change of beneficiary from that of his former wife. What he did do and what he did not do is evidence of his intention.
 The findings of fact as to decedent's intention appear inconsistent. The trial judge held decedent attempted to name his brother as beneficiary and received from the insurance company a Certificate of Group Life Insurance for Policy G-7019 naming his brother as beneficiary. But the court further found that decedent did not complete the change of beneficiary form provided by the insurance company so as to name his brother as beneficiary of policy G-7019. The insurance company representative testified that such a Certificate of Group Life Insurance is not issued unless a change of beneficiary form is received. This then raised the question how decedent received from the insurance company the certificate if he had not executed the change of beneficiary form as required. The only possible basis for the court's finding on this point is that decedent must have erroneously executed a change of beneficiary form as to policy GH-5525, a policy not requiring a beneficiary, and the insurance company in addition either erroneously sent a Certificate of Group Life Insurance for Policy G-7019, or the insurance company realized decedent had incorrectly designated policy GH-5525 but sent decedent a Certificate of Group Life Insurance for Policy G-7019. But this latter theory is unlikely since even assuming that the company caught the mistake they would have no way of knowing whether decedent meant to deal with the life policy G-7019, or policy GD-5468, the accidental death policy also having a beneficiary. The possible argument that the insurance company changed the beneficiaries on both policies as a result of an erroneously executed change of beneficiary request is also untenable. The findings on this point are so confusing that they are ineffectual. But the basis for decision in the case here on appeal does not require such a finding. If the court had had before it the fact as to the two certificates bearing the same date as the request for change of beneficiary, its conclusion might well have been different. See note 3 for further explanation.
 
 
 [6]
 We have adopted the case headnote as it appears in Pacific Reporter as our own because we think it accurately interprets the holding of the court